EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
MICHAEL D. O'REILLEY, State Bar No. 72144
Deputy Attorney General
 455 Golden Gate Avenue, Suite 11000
 San Francisco, CA  94102-7004
 Telephone:  (415) 703-5965
 Fax:  (415) 703-1234
 Email:  Michael.Oreilley@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **IVAN M. NUNEZ,** | C 07-2485 JSW (PR) |
| Petitioner, | |
| v. | |
| **JAMES A. YATES, Warden,** | |
| Respondent. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER TO ORDER TO SHOW CAUSE**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION                                                                           1

STATEMENT OF THE CASE                                                      2

STATEMENT OF FACTS                                                             3

STANDARD OF REVIEW                                                          6

ARGUMENT                                                                              6

    I.     **PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO CALL A WITNESS WAS REASONABLY REJECTED BY THE TRIAL COURT; PETITIONER'S CLAIM REGARDING FAILURE TO CALL OTHER WITNESSES HAS NO MERIT**                                6

        A.    Factual And Procedural Background                     6

        B.    The Merits                                                                7

    II.    **THE COURT OF APPEAL'S DECISION AFFIRMING THE TRIAL COURT'S INSTRUCTION OF THE JURY PURSUANT TO CALJIC. NO. 5. 54.1 WAS REASONABLE**                                10

        A.    The Jury Instructions                                               10

CONCLUSION                                                                           13

1

# TABLE OF AUTHORITIES

2                                                                              **Page**

3    **Cases**

4

5    *Alexander v. Mcotter*
     775 F.2d 595 (5th Cir. 1985)                                                9
6
     *Allen v. Woodford*
7    366 F.3d 823 (9th Cir. 2004)                                                8

8    *Bell v. Cone*
     535 U.S. 685 (2002)                                                         7
9
     *Bragg v. Galaza*
10   242 F.3d 1082 (9th Cir. 2001)                                               8

11   *Brecht v. Abrahamson*
     507 U.S. 619 (1993)                                                        11
12
     *Calderon v. Coleman*
13   525 U.S. 141 (1998)                                                        11

14   *Cupp v. Naughten*
     414 U.S. 141 (1973)                                                        11
15
     *Dows v. Wood*
16   211 F.3d 480 (9th Cir. 2000)                                                8

17   *Estelle v. McGuire*
     502 U.S. 62 (1991)                                                         10
18
     *Henderson v. Kibbe*
19   431 U.S. 145 (1977)                                                        11

20   *In re Alvernaz*
     2 Cal.4th 924 (1992)                                                        7
21
     *In re Swain*
22   34 Cal.2d 300 (1949)                                                        7

23   *Jones v. Gomez*
     66 F.3d 199 (9th Cir. 1995)                                                 9
24
     *Middleton v. McNeil*
25   541 U.S. 433 (2004)                                                        11

26   *Miller-El v. Cockrell*
     537 U.S. 322 (2003)                                                         6
27
     *Mitchell v. Goldsmith*
28   878 F.2d 319 (9th Cir. 1989)                                               10

## TABLE OF AUTHORITIES  (continued)

1                                                                                           **Page**

2    *Murtishaw v. Woodford*
3    2555 F.3d 926 (9th Cir. 2001)                                                          9, 11

4    *People v. Duvall*
     (1995) 9 Cal.4th 464 (1995)                                                                7
5
     *Strickland v. Washington*
6    466 U.S. 668 (1984)                                                                      7, 9

7    *Toomey v. Bunnell*
     898 F.2d 741 (9th Cir. 1990)                                                               9
8
     *United States  v. Elias*
9    269 F.3d 1003 (9th Cir. 2001)                                                             11

10   *United States v. Berry*
     814 F.2d 1406 (9th Cir. 1987)                                                              7
11
     *United States v. Schaflander*
12   743 F.2d 714 (9th Cir. 1984)                                                               9

13   *United States v. Taylor*
     802 F.2d 1108 (9th Cir. 1986)                                                              9
14
     *Villafuerte v. Stewart*
15   111 F.3d 616 (9th Cir. 1997)                                                              11

16   *Williams v. Taylor*
     529 U.S. 362 (2000)                                                                        6
17
     *Woodford v. Visciotti*
18   537 U.S. 19 (2002)                                                                       6, 7

19   **Constitutional Provisions**

20
     United States Constitution
21           Sixth Amendment                                                                    2
             Fourteenth Amendment                                                              11
22

23

24

25

26

27

28

**TABLE OF AUTHORITIES  (continued)**

Page

**Statutes**

Antiterrorism and Effective Death Penalty Act of 1996 ............... 6

California Evidence Code
    § 452(h) ............... 3

California Penal Code
    § 242 ............... 2
    § 243(d) ............... 2
    § 245(a)(1) ............... 2, 11
    § 667 ............... 2
    § 667(a) ............... 2
    § 1192.7 ............... 2
    § 12022.7(a) ............... 2
    § 1203(e)(3) ............... 2

United States Code, Title 28
    § 2254 ............... 1
    § 2254(d)(1) ............... 6
    § 2254(e)(1) ............... 6

**Other Authorities**

California Jury Instructions, Criminal
    No. 5.30 ............... 11
    No. 5.32 ............... 12
    No. 5.51 ............... 11
    No. 5.52 ............... 11
    No. 5.54 ............... 10-12
    No. 5.54.1 ............... 10, 11

1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  PEGGY S. RUFFRA
   Supervising Deputy Attorney General
5  MICHAEL D. O'REILLEY, State Bar No. 72144
   Deputy Attorney General
6    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
7    Telephone:  (415) 703-5965
     Fax:  (415) 703-1234
8    Email:  Michael.Oreilley@doj.ca.gov

9  Attorneys for Respondent

10            IN THE UNITED STATES DISTRICT COURT

11         FOR THE NORTHERN DISTRICT OF CALIFORNIA

12               SAN FRANCISCO DIVISION

13
   IVAN M. NUNEZ,                          C 07-2485 JSW (PR)
14
                           Petitioner,     **MEMORANDUM OF POINTS
15                                          AND AUTHORITIES IN
          v.                               SUPPORT OF ANSWER TO
16                                          ORDER TO SHOW CAUSE**
   JAMES A. YATES, Warden,
17
                           Respondent.
18

19

20                      **INTRODUCTION**

21            On October 15, 2007, pursuant to 28 U.S.C. § 2254, this Court issued an order to show

22  cause based on petitioner's application for habeas corpus filed on May 9, 2007.  Petitioner was

23  convicted by a trial jury in Santa Clara County Superior Court in Count 1 of felony battery with

24  serious bodily injury and in Counts 2 and 3 of assault by means of force likely to produce great

25  bodily injury.  The jury also found true enhancement allegations that petitioner had personally

26  inflicted great bodily injury.  Petitioner admitted he had suffered two serious prior felony

27  convictions and had served two prior prison terms.  The court sentenced petitioner to a state prison

28  term of 35 years to life.

1    This Court has ordered a response to the following two claims:  Petitioner suffered

2  ineffective assistance of counsel under the Sixth Amendment based on counsel's failure to call

3  certain witnesses and petitioners's due process rights were violated by the trial court's use of certain

4  jury instructions.

5                                    **STATEMENT OF THE CASE**

6        In an information filed on January 22, 2004, the Santa Clara County District Attorney

7  accused petitioner in Count 1 of felony battery with serious bodily injury (Cal. Penal Code §§

8  242/243(d))[1]/ and in Counts 2 and 3 of assault by means of force likely to produce great bodily injury

9  (§ 245(a)(1)).   Attached to Counts 1 and 2 were enhancement allegations that petitioner had

10 personally inflicted great bodily injury (§§ 667, 1192.7, 1203(e)(3), 12022.7(a)). The information

11 also alleged that petitioner had suffered six prior felony convictions.  Exhibit 1; 1CT 106-10.

12        On July 13, 2004, the jury found petitioner guilty on each of the three charged counts and

13 found the special allegations to be true.  Exhibit 1; 1CT 202-06.

14        On September 30, 2004, the trial court sentenced petitioner to state prison terms of 25

15 years to life on each of the three counts.  The court struck the enhancement to Count 2 and ordered

16 the sentence on that count stayed.  The court ordered the sentences on Counts 1 and 3 to be served

17 concurrently. Finally, the court ordered petitioner to serve an additional 10 years pursuant to section

18 667(a) for a total prison term of 35 years to life.  Exhibit 1; 2CT 396-97; Exhibit 14; 3RT 637-42.

19        On March 25, 2005,petitioner filed an opening brief in the state Court of Appeal.   (No.

20 H028072).  Exhibit 3.

21        On May 12, 2005, respondent filed a brief in opposition (No. H028072).  Exhibit 4.

22 Petitioner's reply brief was filed May 27, 2005 (No. H028072).  Exhibit 5.

23        On October 12, 2005, the Court of Appeal issued a decision affirming the judgment in its

24 entirety (No. H028072).  Exhibit 6.

25        On November 15, 2005, petitioner filed a petition for review in the state Supreme Court

26 (No. S138858).  Exhibit 7.

27 _____

28        1.  All further statutory references are to the California Penal Code unless otherwise stated.

1    On December 21, 2005, the petition was denied (No. S38858).  Exhibit 8.

2    On an unknown date, petitioner filed an application for habeas corpus in the Santa Clara

3 County Superior Court.  The court denied the application on May 31, 2006.  Exhibit 9.

4    On August 17, 2006, petitioner field an application for habeas corpus in the state Court of

5 Appeal.  Exhibit 10.  The application as denied August 23, 2006 (No. H030538).  Exhibit 11.

6    On September 20, 2006, petitioner field an application for habeas corpus in the state

7 Supreme Court.  Exhibit 12.  The application was denied March 28, 2007 (No. 146699).  Exhibit 13.

8                          **STATEMENT OF FACTS**

9    This factual summary is taken verbatim, including the footnote, from the decision by the

10 Court of Appeal.  Exhibit 6.

11    *Prosecution Case*

12    The incident that led to defendant's conviction occurred at approximately 8:00 a.m.
on October 14, 2003, at the intersection of Marten Avenue and Mount Rushmore Drive
13 in San Jose near August Boeger Junior High School.  At the time of the incident, Chieu
Nguyen and Toan Pho were employed by the San Jose Police Department as crossing
14 guards and were assigned to patrol the intersection in front of the school.  Marten Avenue
and Mount Rushmore Drive form a T-intersection; Mount Rushmore terminated where
15 it intersected with Marten.  The entrance to the school parking lot was at the top of the T,
opposite Mount Rushmore.
16
    The school was located on the south[2/] side of Marten Avenue.  There were two
17 crosswalks at the intersection.  One crosswalk spanned Marten Avenue and consisted of
two parallel yellow lines with wide yellow bands painted inside of them.  It ran from the
18 northeast corner of the intersection to the sidewalk in front of the school.  The second
crosswalk spanned Mount Rushmore Drive.  It consisted of two parallel yellow lines that
19 ran from the northeast corner of the intersection to the northwest corner of the
intersection.  There were no bars painted inside the crosswalk on Mount Rushmore.
20
    Nguyen and Pho shared responsibility for patrolling the crosswalks.  Pho was
21 responsible for patrolling the south side of Marten Avenue and Nguyen was responsible
for the north side of Marten Avenue, including the crosswalk on Mount Rushmore.
22
    At the time of the incident, both Nguyen and Pho stepped out onto the crosswalk on
23 Marten and stopped the traffic so that students could cross.  Both men stood in the
crosswalk, holding aluminum stop signs.  Defendant was driving a gold Mazda RX-7
24

_____

25    2.  On our own motion, we take judicial notice of various maps showing the location of the
26 school (Cal. Evidence Code § 452(h)).  In so doing, we note that the directional information on
People's Exhibit 5, a diagram of the intersection, is incorrect.  According to Exhibit 5, the school
27 is on the north side of Marten Avenue.  According to the maps, the school is on the south side of
Marten Avenue.  Directional references in this opinion shall correspond to the maps that we have
28 judicially noticed and not Exhibit 5.

MPA In Support Of Answer To OSC- *Nunez v. Yates* - C 07-2485 JSW (PR)

westbound on Marten. When he reached the intersection, defendant ignored Nguyen's stop sign and attempted to turn right onto Mount Rushmore. At first, Nguyen thought defendant did not see the sign and lowered the stop sign so it would be easier for defendant to see. As defendant inched his car around the corner, the car made contact with Nguyen's sign. The stop sign touched defendant's car on the driver's side of the windshield near the mirror. Nguyen stepped in front of defendant's car and signaled for him to back it up. Defendant continued to inch his car forward.

After Nguyen told defendant to back up, defendant looked angry. Nguyen felt unsafe. He turned and ran from the crosswalk on Marten toward the crosswalk on Mount Rushmore. Defendant stopped his car in the crosswalk on Mount Rushmore, jumped out, chased Nguyen to the middle of the crosswalk on Mount Rushmore, and started hitting him in the chest. Nguyen dropped his sign. Defendant grabbed Nguyen in a "bear hug" from the front and threw him to the ground. Nguyen's head hit the pavement. Nguyen denied hitting defendant with his sign. A 14-year-old student eyewitness did not see Nguyen hit defendant with the sign.

After Pho helped the children cross safely, he ran over to the crosswalk on Mount Rushmore to help Nguyen. Pho yelled, "Stop, stop! Calm down!" As he ran, Pho held his aluminum stop sign in his right hand, hanging down behind his back toward his knees. It was easier to run with the sign that way.

As Pho approached, defendant turned around and punched Pho in the throat with his fist. Defendant jumped back into his car and fled the scene, heading northbound on Mount Rushmore. Pho started to fall backwards, but regained his balance. He then helped Nguyen to the sidewalk.

Pho did not put the sign up to protect himself or attempt to trike defendant with the sign. The student eyewitness did not see Pho turn his sign onto its side or use it like a hatchet. However, the student testified that Pho tried to hit defendant wit h his sign, but did not get a chance to actually hit defendant because he got punched in the throat "pretty quick[ly]."

During the incident, three vehicles stopped behind defendant's car on Marten. Sheila Carillo, the driver of the third vehicle, was curious about what was holding up traffic. She looked to the right and saw defendant struggling with Pho in the crosswalk on Mount Rushmore. A few moments later, she saw the gold Mazda leave the scene. After the incident, defendant drove home to his mother's house, which was near the school. Carillo, who had also turned onto Mount Rushmore, saw defendant's gold Mazda parked in the driveway a few blocks away and called the police.

Later that day, police investigators found defendant's car at a mobile home park. By that time, defendant had removed the license plates from the car and installed a novelty plate on the rear of the car. Defendant took the license plates off his car because he did not want to get arrested.

After defendant was arrested, police detectives noticed abrasions and swelling on defendant's knuckles. This led officers to believe defendant had been in a fight. Defendant told that [sic] officers his hands were not swollen and attributed the redness to the sun, to a rash, and to dry skin.

In a taped interview, defendant told the officers the crossing guards made threatening gestures at him with their stop signs and claimed he acted in self defense. One of the officers inspected defendant's car. It did not have any dents or damage caused by a blow with a metal sign. The officers did not know that defendant had painted the car himself.

MPA In Support Of Answer To OSC- *Nunez v. Yates* - C 07-2485 JSW (PR)

They did not notice that he had paint on his fingernails at the time of the interview.

Nguyen felt pain in his back and head and was taken by ambulance to San Jose Medical Center. As a result of the incident, Nguyen sustained a subdural, subarachnoid hematoma from a blow to the back of his head, an abrasion and a laceration to the back of his head, a non-displaced fracture of the sixth right rib, and a contusion with swelling along the length of his back. The hospital trauma physician consulted with a neurosurgeon, who advised against surgery. Nguyen was hospitalized for two days for observation. He also received follow-up care from a neurosurgeon.

Pho was treated at San Jose Medical Center and released. He experienced pain in his throat, which lasted about two months. He had difficulty speaking and swallowing. He was on a liquid diet for about 20 days.

At the time of the incident, Nguyen was five feet, six inches tall and weighed 115 to 116 pounds. He was 48 years old. Pho was five feet, six inches tall and weighed 120 pounds. He was 57 years old. Defendant was between five feet nine inches and six feet tall and weighed 190 to 195 pounds. Defendant was 38 years old.

*Defense Case*

Defendant did not testify. He relied principally on the audiotape of his interview with the police. In the interview, defendant said he was driving down the road when he saw two men with big stop signs. There were no children in the area, so he attempted to turn right from Marten onto Mount Rushmore, when one of the men (Nguyen) started chasing his car with the stop sign. Nguyen was swinging the sign and trying to dent defendant's car. Defendant was not sure whether Nguyen made contact with the car.

Defendant stepped out of his car and asked Nguyen what was going on. Nguyen looked at him "all crazy," charged him, and tried to hit him over the head with the sharp edge of the sign. Defendant blocked Nguyen's move. Nguyen fell onto his "butt." Pho began to chase defendant and did the same thing as Nguyen.

Defendant stated that the crossing guards swung their signs at his skull, that they wanted to "chop" him in the head with their signs, and that they used the signs like knives or swords. Defendant said Pho turned his sign flat to hit him (defendant) over the head and slice him. The sign probably hit his shoulder, but there was no sign of injury. defendant blocked the crossing guards' moves. Defendant admitted he pushed one of the guards in the face with a semi-closed fist. He later described this same maneuver as a palm strike. He said it may have looked like he was hitting him when he was actually blocking him. Defendant admitted hitting each of the guards with one "palm strike." He pushed Nguyen "pretty far" out of the way and gave him an "elbow block" and then Nguyen fell.

Defendant left because he did not want to get into a bigger fight. Defendant did not report the incident to the police because he did not think it was that big of a deal. Defendant claimed the crossing guards acted this way because they were prejudiced against him or his "shiny red hot rod." He speculated that they came after him because "their culture or somethin' is different" and "they didn't like Americans." Defendant also relied on Carillo's testimony that he and Pho were struggling in the crosswalk.

1

**STANDARD OF REVIEW**

2          This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

3   (AEDPA) which imposes a "highly deferential" standard for evaluating state court rulings and

4   "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti,* 537

5   U.S. 19, 24 (2002) (per curiam).  Under AEDPA, the federal court has no authority to grant habeas

6   relief unless the state court's ruling was "contrary to, or involved an unreasonable application of,"

7   clearly established Supreme Court precedent.  28 U.S.C. § 2254(d)(1).  A decision is "contrary to"

8   law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

9   question of law, or reaches a different conclusion based on facts materially indistinguishable from

10  a Supreme Court case.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A decision constitutes an

11  "unreasonable application" of Supreme Court precedent if the state court's application of law to the

12  facts is not merely erroneous but objectively unreasonable.  *Id.* at 411-13.  A state court's ruling

13  based on  a factual determination also must be "objectively unreasonable" in light of the record" to

14  warrant habeas relief.  *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003); 28 U.S.C. § 2254(d)(2).

15  State court findings of fact are presumed correct unless rebutted by clear and convincing evidence.

16  28 U.S.C. § 2254(e)(1).  The petitioner bears the burden of showing that the state court's decision

17  was unreasonable.  *Woodford v. Visciotti*, 537 U.S. at 25.

18

**ARGUMENT**

19

**I.**

20  **PETITIONER'S CLAIM OF INEFFECTIVE ASSISTANCE OF
    COUNSEL FOR FAILURE TO CALL A WITNESS WAS REASONABLY**

21  **REJECTED BY THE TRIAL COURT; PETITIONER'S   CLAIM
    REGARDING FAILURE TO CALL OTHER WITNESSES HAS NO**

22  **MERIT**

23  **A.    Factual And Procedural Background**

24          Petitioner claims that he received ineffective assistance of trial counsel because his

25  attorney failed to call the following four witnesses to testify on his behalf:  San Jose Police Officer

26  Ardizzone, Donna Padron, Sheila Carillo, and San Jose Police Officer Biskup.

27          As to each witness, petitioner's claim, in its entirety, consists of  the following:  "Ms.

28  Padron made statements to Officer Ardizzone that were favorable and essential to his defense.

Officer Ardizzone [sic] attendance at this hearing was needed to corroborate Ms. Padron's statement. [¶ ] Officer Biskup's attendance at this hearing was needed to impeach mr. [sic] Pho's testimony, whose testimony at trial was a complete turnaround as to what Mr. Pho told Officer Biskup during the investigation to the facts of this case.  [¶]  The testimony of Ms. Carrillo [sic] was crucial and necessary to challenge the credibility of Mr. Pho whose testimony was entire [sic] different to what Ms. Carrillo [sic] witnessed."  Pet. at. 6.

This claim was not raised on appeal nor in the petition for review in the California Supreme Court.  Petitioner did file an application for habeas corpus in the trial court on an unknown date  raising this claim, but only  as to one of the witnesses listed, Donna Padron.  The claim did not mention the three other witnesses.  The trial court, citing *Strickland v. Washington*, 466 U.S. 668 (1984), denied  the claim in a written ruling, which stated in part: "Petitioner has failed to show any such witness existed."  Exhibit 9.  The court, quoting *In re Alvernaz*, 2 Cal.4th 924, 938 (1992) also said it was not required to accept as true "every self-serving statement after conviction, and sentence.  A contrary holding would lead to an unchecked flow of easily manufactured claims." (Internal quotation marks omitted).  *Id.*

Petitioner did raise the claim as to all four witnesses in  his habeas applications in the Court of Appeal and in the state Supreme Court.  The Court of Appeal denied the writ without comment.  The Supreme Court's denial cited *In re Swain*, 34 Cal.2d 300 (1949) and *People v. Duvall* (1995) 9 Cal.4th 464 (1995).  The cite to both cases indicates the Court found the allegations in the petition were "vague," "conclusory," did not state fully and with particularity the facts upon which relief was sought, and that there was no explanation for the delay in presenting facts to support the claim.  *In re Swain*, 34 Cal.2d at 304; *People v. Duvall*, 9 Cal.4th at 304.  Exhibit 13.

**B.    The Merits**

To prevail here, petitioner must show that the state court applied *Strickland* to the facts of petitioner's case in an objectively unreasonable manner.  *Woodford v. Visciotti*, 537 U.S. 19; *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).  A claim of ineffective assistance of counsel due to failure to call a witness is deficient  where there is no showing what the witness would have testified to and how it might change the outcome.  *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987).

MPA In Support Of Answer To OSC- *Nunez v. Yates* - C 07-2485 JSW (PR)

1       There are two  principal flaws in petitioner's claim here.  The first flaw is that Officer

2   Ardizzone *did* testify at trial (Exhibit 14; 1RT 247-73; 2RT 295-316) and testimony by stipulation

3   was received from Sheila Carillo (Exhibit 14; 3RT 473-91) and from Officer Biskup (Exhibit 14;

4   3RT 499-501).

5       The trial court found that Sheila Carillo was unavailable based on information from

6   defense counsel that Carillo was in Mexico.  Exhibit 14; 2RT 427-28, 437-40.  The trial court then

7   permitted Carillo's preliminary examination testimony to be read to the jury.  Exhibit 14; 3RT 471-

8   91.

9       Officer Biskup was on vacation during the trial and, although a subpoena for him had been

10  served on the police department, Biskup never had been served personally and apparently no one

11  was able to contact him.  Exhibit 14; 3RTB 465-66.  The trial court  indicated it would consider a

12  motion to recess the trial until Biskup returned, but based on the police reports, defense counsel and

13  the prosecutor reached a stipulation as to what Biskup's testimony would have been and the

14  stipulation was read to the jury.  Exhibit 14; 3RT 467, 498-501.

15      The second flaw in the claim concerns potential witness Donna Padron.  Petitioner fails

16  to demonstrate how Padron's testimony would have led to a more favorable verdict.  Petitioner has

17  not offered a declaration from Padron demonstrating what she would have said at trial.  In the

18  absence of such a declaration, petitioner cannot meet his burden to affirmatively show prejudice

19  from the failure to call the witness.  *Allen v. Woodford*, 366 F.3d 823, 846 n.2 (9th Cir. 2004) ("the

20  district court correctly disregarded the failure to call [three named witnesses], because Allen failed

21  to make a showing that they would have testified if counsel had pursued them as witnesses"); *Dows*

22  *v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (petitioner presented no evidence that alleged alibi

23  witness "actually exists, other than Dows' self-serving affidavit," and could not show that witness

24  would have presented helpful testimony because he failed to present affidavit from witness); *Bragg*

25  *v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001).

26      According to a copy of  San Jose Police Department report No. 03-287-0232, Padron told

27  Officer Ardizzone in part the following: She "saw the driver of the car get out and begin punching

28  and striking at a crossing guard with his hands.  Padrone stated that she saw the crossing guard try

MPA In Support Of Answer To OSC- *Nunez v. Yates* - C 07-2485 JSW (PR)

8

1   and defend himself by striking at the suspect with his crossing sign, but that the assault was

2   completely initiated by the driver of the car.  Padron then told me that when a second crossing guard

3   came to the aid of the first, the driver of the car began to attack him also."  Padron concluded by

4   saying that she did not see either crossing guard fall and was not sure if she could identify the driver.

5   Exhibit 15.

6        This statement is not helpful to petitioner.  Petitioner did not testify but in his taped

7   statement to police  admitted he  was the driver and admitted the guards "fell."  He insisted the

8   crossing guards were the aggressors.  He said that Nguyen was "'chasin' me" and using his sign like

9   a "sword."  Exhibit 2 at 6-10, 13-14.  He claimed the guards "came after me crazy."  *Id*. at 16.

10       To establish ineffective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668

11  requires  a showing (1) that the attorney's errors or omissions reflect a failure to exercise the skill,

12  judgment, or diligence of a reasonably competent attorney; and (2)  that prejudice resulted from the

13  attorney's conduct.  Prejudice is established if the defendant demonstrates that there is a reasonable

14  probability that, but for counsel's unprofessional errors and omissions, the result of the proceedings

15  would have been different.  *Id*. at 688-94.  Petitioner bears a heavy burden of showing that counsel's

16  performance was deficient, and not reasonable trial strategy.  *Murtishaw v. Woodford*, 2555 F.3d

17  926, 939 (9th Cir. 2001); *Toomey v. Bunnell*, 898 F.2d 741, 743 (9th Cir. 1990).  Conclusory

18  allegations not supported by specifics do not warrant relief.  *Jones v. Gomez*, 66 F.3d 199, 205 (9th

19  Cir. 1995).  Vague and speculative assertions are deficient.  *United States v. Taylor*, 802 F.2d 1108,

20  1119 (9th Cir. 1986).  In order to succeed on an ineffective assistance of counsel claim, a petitioner

21  must make a sufficient factual showing to substantiate the claims.  *United States v. Schaflander*, 743

22  F.2d 714, 721 (9th Cir. 1984).

23       Presentation of witness testimony is essentially strategy and in the domain of trial counsel.

24  *Alexander v. Mcotter*, 775 F.2d 595, 602 (5th Cir. 1985).  In order to meet the *Strickland* standard

25  here, petitioner must show that the witness testimony would have been favorable and that the

26  witness actually would have testified.  He has shown neither.  Accordingly, the trial court's decision

27  to reject this claim was reasonable and it should be denied.

28

MPA In Support Of Answer To OSC- *Nunez v. Yates* - C 07-2485 JSW (PR)

## II.

**THE COURT OF APPEAL'S DECISION AFFIRMING THE TRIAL COURT'S INSTRUCTION OF THE JURY PURSUANT TO CALJIC. NO. 5. 54.1 WAS REASONABLE**

**A.    The Jury Instructions**

Over petitioner's objection, the trial court instructed the jury with CALJIC No. 5.54.1 as follows:

> The right of self-defense is only available to a person who initiated an assault if he has done all of the following:
>
> He has actually tried, in good faith, to refuse to continue fighting;
>
> He has clearly informed his opponent, by either words or conduct, that he wants to stop fighting;  and
>
> He has clearly informed his opponent, by either words or conduct, that he has stopped fighting.
>
> After he has done these three things, he has the right to self-defense if his opponent continues to fight.

Exhibit 14; 3RT 523.

Petitioner objected to the instruction because he claimed it made him look like the aggressor.  Exhibit 14; 2RT 449.  He stated he intended to argue to the jury that Nguyen and Pho were the aggressors; Nguyen, because he hit defendant's car with a sign, and Pho because he charged him with a sign.  Exhibit 14; 2 RT 449-51.  Petitioner claims the court should have instructed the jury with the 2004 revised version of CALJIC No. 5.54 which contains very similar language but includes the following alternative paragraph in section [2]:

> If the victim of simple assault responds in a sudden and deadly, the original aggressor need not attempt to withdraw and may use reasonably necessary force in self-defense.

A challenge to jury  instructions does not raise a federal constitutional issue absent a showing that erroneous instructions so infected the trial as to deprive the defendant of due process.  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  The test is whether there is a "reasonable likelihood" that because of the alleged instruction error, the jury applied the instructions in a way that violated the Constitution.  *Id*. at 72.  The correctness of CALJIC, or any other instructions, under state law is not a federal question.  *Estelle v. McGuire*, 502 U.S. at 71-72; *Mitchell v. Goldsmith*, 878 F.2d

319, 324 (9th Cir. 1989).  And it is not enough to show that the instructions were undesirable, erroneous or condemned; the instructions must violate some due process right protected by the Fourteenth Amendment.  *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  The challenged instructions must be evaluated in light of the instructions as a whole and the evidence produced at trial, as well as the argument of counsel.  *Middleton v. McNeil*, 541 U.S. 433, 438 (2004) (per curiam).  If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining  the jury's verdict before granting habeas relief.  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam).

With the exception of CAJIC No. 5.54's last paragraph, CALJIC No. 5.54 (the instruction petitioner requested) and CALJIC No. 5.54.1 (the instruction given) are virtually identical.

Consequently, petitioner's claim is not that an erroneous jury instruction was given but that the court erred in not giving a requested instruction, specifically the last paragraph of CALJIC No. 5.54.

When the issue is failure to give an instruction, as opposed to giving an erroneous instruction,  petitioner's burden is especially heavy because "[a]n omission, or an incomplete instruction is less likely to be prejudicial than a misstatement of the law."  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977); *Villafuerte v. Stewart,* 111 F.3d 616, 624 (9th Cir. 1997).  The significance of an omitted instruction is evaluated by a comparison of the omitted instruction with the instructions that were given. *Murtishaw v. Woodford*, 255 F.3d 926 at 971.  Alleged confusion from allegedly contradictory instructions was rejected as not even rising to plain error in *United States v. Elias*, 269 F.3d 1003, 1018 (9th Cir. 2001).  Here, petitioner concedes the jury instructions provided by the trial court were correct statements of the law.

There was no confusion in this case. After retiring for deliberations, the jury asked only one question about the instructions.  That question concerned the definition of the word "likely" contained in California Penal Code section 245(a)(1) (assault by mean of force likely to cause great bodily injury).  Exhibit 14; 3RT 604-08.

In its general instructions, the trial court instructed the jury with CALJIC Nos. 5.30 (self-defense against assault), 5.51 (self-defense – actual anger not necessary), 5.52 (self-defense – when

1  danger ceases), and 5.32 (defense of another).  Exhibit 14; 3RT 517-23.  The court  instructed the

2  jury not to "single out any particular sentence or any individual point or instruction and ignore the

3  others.  Consider the instructions as a whole and each in light of all the others."  Exhibit 14; 3RT

4  504.  The jury was instructed that it was not to be influenced by prejudice against petitioner, and that

5  it must not be influenced by sentiment, conjecture, sympathy, passion, prejudice, public opinion, or

6  public feeling.  Exhibit 14; 3RT 503.  The jury was instructed properly on the essential elements of

7  the charged offenses and the lesser included offenses of misdemeanor assault to each count.  Exhibit

8  14; 3RT 514-15.  The jury was instructed that the prosecution had the burden of proof.  Exhibit 14;

9  3RT 512-13.  The jury also was instructed that petitioner was presumed innocent and that in order

10  to be found guilty of any offense, the prosecution must prove its case beyond a reasonable doubt.

11  Exhibit 14; 3 RT 512-13.

12        The Court of Appeal affirmed the trial court's decision on the instructions including its

13  refusal to give the alternative paragraph in section [2] at CALJIC No. 5.54, finding that even if the

14  instruction petitioner requested  applied to an assault involving more than one victim, it was

15  inapplicable here because the  instruction petitioner requested applies only when the original

16  aggressor commits a simple assault or trespass and does not employ deadly force.   The court

17  explained:

18        Assuming the instruction applies in a situation such as this involving more than one
    victim, defendant's initial attack on Nguyen can hardly be characterized as a simple

19      assault.  There was undisputed evidence that defendant's assault on Nguyen involved
    force that broke of one of Nguyen's ribs, caused him to hemorrhage in the brain, and sent

20      him to the hospital for two days.  The trauma surgeon that treated Nguyen testified that
    the subdural hematoma Nguyen sustained is generally caused by a blow to the back of the

21      head, was more serious than a concussion, and involved significant damage to the brain
    tissue.  In his taped statement, defendant admitted he hit Nguyen with a palm strike, gave

22      him an "elbow block," pushed him "pretty far" out of the way, which in turn caused
    Nguyen to fall.  In closing defense counsel argued, "[defendant] tells you that when he

23      pushed [Nguyen] he fell back."  Defendant's attempt to characterize his attack on Nguyen
    as a simple assault within the meaning of *Quach* [*People v. Quach*, 116 Cal.App.4th 294

24      (2004)] and paragraph two of the revised CALJIC No. 5.54 instruction is without merit.
    Since there was no evidence defendant committed a simple assault on either Nguyen or

25      Pho that resulted in a sudden and deadly counterassault by Pho, we conclude the trial
    court was not required to instruct the jury with alternate paragraph two of the 2004

26      revision to CALJIC No. 5.54.

27  Exhibit 6.

28        Taking into consideration the record as a whole, the Court of Appeal decision rejecting

MPA In Support Of Answer To OSC- *Nunez v. Yates* - C 07-2485 JSW (PR)

1 | this claim was reasonable.

2 | **CONCLUSION**

3 | Petitioner's claim of ineffective assistance of counsel for failure to call certain witnesses

4 | (Claim 1 ) was reasonably rejected by the trial court because petitioner has not shown that proposed

5 | witness Padron could have provided favorable evidence. His claim regarding the other three

6 | witnesses is without merit as evidence from those witnesses was admitted at trial.  The state Court

7 | of Appeal reasonably rejected petitioner's claim of instructional error (claim 2).

8 | Dated:  May 12, 2008

9 | Respectfully submitted,

10 | EDMUND G. BROWN JR.
Attorney General of the State of California

11 | DANEE R. GILLETTE
Chief Assistant Attorney General

12 | GERALD A. ENGLER
Senior Assistant Attorney General

13 |

14 | PEGGY S. RUFFRA
Supervising Deputy Attorney General

15 |

16 | /s/  Michael D. O'Reilley

17 | MICHAEL D. O'REILLEY
Deputy Attorney General

18 | Attorneys for Respondent

19 | 40248697.wpd
SF2007402772

MPA In Support Of Answer To OSC- *Nunez v. Yates* - C 07-2485 JSW (PR)