**Ivan Nunez**
Pleasant Valley State Prison
P.O. Box 8502
Coalinga, CA.  93210-8502
**CDC ID#:** J-40408
**Pro se**

**FILED**

JUL - 2 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

In the UNITED STATES DISTRICT COURT

For the NORTHERN DISTRICT of CALIFORNIA

NUNEZ, Ivan M.,

    Petitioner,

vs.

YATES, James, Warden,

    Respondent.

**No.** C-07-2485 JSW (PR)

**PETITIONER'S TRAVERSE TO
RESPONDENT'S ANSWER ON
HABEAS CORPUS.
(28 U.S.C. § 2254.)**

# TABLE OF CONTENTS

Page #

PETITIONER'S TRAVERSE TO RESPONDENT'S
ANSWER ON HABEAS CORPUS. (28 U.S.C. §2254.) _____ 1.

TRAVERSE TO RESPONDENT'S ANSWER TO ORDER TO SHOW CAUSE. _____ 2.

  STATEMENT OF THE CASE. _____ 6.

  STATEMENT OF FACTS.

    Prosecution's case. _____ 10.

    Defense case. _____ 12.

ARGUMENT.

I. THE TRIAL COURT ERRED PREJUDICIALLY BY FAIL-
ING TO INSTRUCT THE JURY PURSUANT TO THE RE-
VISED VERSION OF CALJIC NO. 5.54, WHICH AFFORDS
AN AGGRESSOR THE RIGHT TO SELF-DEFENSE WHEN
CONFRONTED BY A SUDDEN, DEADLY ATTACK; THE
ERROR REQUIRES REVERSAL OR COUNT THREE.

  FACTUAL AND PROCEDURAL BACKGROUND. _____ 14.

  APPLICABLE LAW AND STANDARD OF REVIEW. _____ 16.

  THE TRIAL COURT ERRED BY FAILING TO INCLUDE THE
LANGUAGE OF THE 2004 REVISION OF CALJIC NO.
5.54 IN ITS INSTRUCTION ON SELF-DEFENSE BY
AN AGGRESSOR. _____ 17.

  THE ERROR WAS PREJUDICIAL, REQUIRING REVERSAL. 21.

II. INEFFECTIVE ASSISTANCE OF COUNSEL, TRIAL
COUNSEL FAILED TO COMPEL ATTENDANCE OF WIT-
NESSES CRUCIAL FOR PETITIONER'S DEFENSE. _____ 26.

III. THE RIGHT TO COMPULSORY PROCESS AS GUARAN-
TEED BY THE SIXTH AMENDMENT OF THE UNITED STATES
CONSTITUTION WAS DENIED BY TRIAL COUNSEL, _____ 30.

# TABLE OF CONTENTS

Page#

IV. PETITIONER'S SIXTH AMENDMENT RIGHT TO CON-
FLICT-FREE REPRESENTATION AS GUARANTEED BY
THE UNITED STATES CONSTITUTION WAS VIOLATED
AND WAS THE INEFFECTIVE ASSISTANCE OF COUNSEL — 34,

PRAYER FOR RELIEF, ——————————————— 37,

VERIFICATION, ——————————————— 38,

# TABLE of AUTHORITIES

## Common Law

Page #

Aceves v Superior Court
(1996) 51 Cal.App. 3d 584. _____ 36.

Boyd v. Ward
(10th Cir. 1999) 179 F.3d 904. _____ 30, 31.

Burden v. Zant
(11th Cir. 1989) 871 F.2d 956, _____ 35.

Chambers v. Mississippi
(1973) 410 U.S. 284, _____ 32.

Chapman v. California
(1967) 386 U.S. 18. _____ 4, 24, 25.

Cool v. United States
(1972) 409 U.S. 100, _____ 24.

Coy v. Iowa
(1988) 487 U.S. 1012. _____ 32.

Cuyler v. Sullivan
(1984) 446 U.S. 335. _____ 4, 36,

Delaware v. Fensterer
(1985) 474 U.S. 15, _____ 32,

Flanagan v. United States
(1984) 465 U.S. 268, _____ 36.

Halloway v. Arkansas
(1978) 435 U.S. 475, _____ 36.

Kentucky v. Stincer
(1987) 482 U.S. 730. _____ 32.

Kyles v. Whitley
(1995) 514 U.S. 419. _____ 32.

Laverson v. Superior Court
(1983) 34 Cal.3d 530. _____ 35.

# TABLE of AUTHORITIES

COMMON LAW (continued)—                                    Page #

Maryland v. Craig
(1990) 497 U.S. 836. _____ 32.

Mathews v United States
M 1988) 485 U.S. 58. _____ 4, 24.

McGreagor v. Gibson
(10th Cir. 2000) 219 F.3d 1245. _____ 30.

Miller v. Champion
(10th Cir. 1998) 161 F.3d 129. _____ 31.

Miranda v. Arizona
(1966) 384 U.S. 436. _____ 11.

Newstad v. Gibson
(10th Cir. 1998) 158 F.3d 1085. _____ 31.

People v. Barraza
(1979) 23 Cal.3d 675. _____ 16, 20.

People v. Bonin
(1989) 47 Cal.3d 808. _____ 35.

People v. Braverman
(1998) 19 Cal.4th 142. _____ 17, 21, 22.

People v. Carmen
(1951) 36 Cal.2d 768. _____ 17.

People v. Carpenter
(1997) 15 Cal.4th 312. _____ 17.

People v. Dancer
(1996) 45 Cal.App.4th 1677. _____ 35.

People v. Flood
(1998) 18 Cal.4th 470. _____ 17.

People v. Gleghorn
(1987) 193 Cal.App.3d 196. _____ 17, 19.

# TABLE of AUTHORITIES

COMMON LAW (continued) —                                    Page#

People v. Hardy
(1992) 2 Cal.4th 86. _____ 35.

People v. Hecker
(1895) 109 Cal. 451. _____ 18.

People v. Hernandez
(2003) 111 Cal.App. 4th 582. _____ 18.

People v. Ledesma
(1987) 43 Cal.3d 171. _____

People v. Maguire
(1998) 67 Cal.App.4th 1022. _____ 28.

People v. Melton
(1988) 44 Cal.3d 718. _____ 19.

People v. Pena
(1984) 151 Cal.App.3d 462. _____ 20.

People v. Quach
(2004) 116 Cal.App.4th 294.          17, 21, 23, 25.

People v. Sanchez
(1950) 35 Cal.2d 522. _____ 16.

People v. Sawyer
(1967) 256 Cal.App. 2d 66. _____ 17.

People v. Sedano
(1974) 10 Cal.3d 703. _____ 16, 21.

People v. Stewart
(1976) 16 Cal.3d 133. _____ 16.

People v. Superior Court (Romero)
(1996) 13 Cal.4th 497. _____ 7.

People v. Turner
(1990) 50 Cal.3d 668. _____ 19.

# TABLE of AUTHORITIES

COMMON LAW (continued)—

People v. Vest
(1974) 43 Cal.App. 3d 728. _____ 27.

People v. Wickersham
(1982) 32 Cal.3d 307. _____ 16.

Pointer v. Texas
(1965) 380 U.S. 400. _____ 32.

Richmond v. Embry
(10th Cir. 1997) 122 F.3d 866. _____ 28, 29.

Saldevilla-Lopez v. United States
(1st Cir. 1994) 17 F.3d 480. _____ 35.

Stephans v United States
( Cir. 1979) 595 F.2d 1060. _____ 35.

Stevenson v. United States
(1896) 162 U.S. 313. _____ 4, 24.

Strickland v Washington
(1984) 466 U.S. 668. _____ 3, 4, 31.

Taylor v. Singletary
(11th Cir. 1997) 122 F.2d 1390. _____ 31.

Uhl v. Superior Court
(1974) 37 Cal.App.3d 526. _____ 35.

United States v. Anderson
(D.C. Wash. 1992) 790 F.Supp. 231. _____ 35.

United States v. Bagley
(1985) 473 U.S. 667. _____ 32.

United States v. Bautista
(10th Cir. 1998) 145 F. 3d 1140. _____ 28.

United States v. Escobar de Bright
(9th Cir. 1984) 742 F. 2d 1196. _____ 24.

# TABLE of AUTHORITIES

COMMON LAW (continued) —                                    Page #

United States v. Golub
(10th Cir. 1980) 638 F.2d 185. _____ 36.

United States v. Hamilton
(7th Cir. 1997) 107 F.3d 1508. _____ 32.

United States v. Hicks
(4th Cir. 1984) 748 F.2d 854. _____ 24.

United States v. Kenny
(9th cir. 1981) 645 F.2d 1323. _____ 24.

United States v. Marbella
(9th Cir. 1996) 73 F.3d 1508. _____ 32.

United States v. Morris
(N.D. Tex. 1992) 790 F.Supp. 1238. _____ 35.

United States v. Powell
(10th Cir. 1992) 226 F.3d 1181. _____ 28.

United States v. Shay
(1st Cir. 1995) 57 F.3d 126. _____ 31.

United States v. Valenzuela — Bernal
(1982) 458 U.S. 858. _____ 32.

United States v. Williamson
(7th Cir. 2000) 202 F.3d 974. _____ 31.

Viriglio v. State (Wyoming)
(1992) 834 P.2d 1125. _____ 24.

Vivitor Corp. v. Broidy
(1983) 143 Cal.App.3d 878. _____ 36.

Washington v. Texas
(1967) 338 U.S. 14. _____ 28, 30.

Wong v. Money
(6th Cir. 1998) 142 F.3d 313. _____ 30.

# TABLE of AUTHORITIES

CONSTITUTION                                          Page#

Article I, § 9, Cl. 2. ———————————— 3.

Sixth Amendment. —————————— 3, 4, 27, 30,

Fourteenth Amendment. ———————— 3, 4, 30.

UNITED STATES CODE

28 U.S.C. § 2244 (b). ————————————— 3.

28 U.S.C. § 2244 (d)(1). ———————————— 3, 4.

28 U.S.C. § 2254 (a). ———————————— 1, 3, 4.

28 U.S.C. § 2254 (d)(1). ——————————— 3, 4.

28 U.S.C. § 2254 (d)(2). ——————————— 3, 4.

RULES GOVERNING HABEAS CORPUS PETITIONS

Rule 5. ————————————————— 4, 5.

CALIFORNIA LAWS

  Constitution

Article I, § 15. ———————————————— 27.

  Jury Instructions.

CALJIC 5.54. ———————— 15, 16, 17, 18, 19, 21, 22.

CALJIC 5.54 (USE NOTE). —————————— 17.

CALJIC 5.54.1. ———————————————— 15.

CALJIC 5.56. ——————————— 21, 22, 23.

CALJIC 9.12. ———————————————— 13.

  Penal Code

Section 242. ————————————————— 3, 6.

Section 243. ————————————— 2, 6, 13.

Section 245, subd. (a)(1). ————— 2, 6, 7, 14.

Section 197. ———————————————— 17.

Section 654. ————————————————— 7.

Section 667, subd. (a). ——————— 2, 6, 7.

Section 667, subd. (b). ——————————— 2, 6.

# TABLE of AUTHORITIES

CALIFORNIA LAWS (continued)—                    Page #

Penal Code (continued)—

" Section 667.5, subd. (b). _____ 2, 6, 7.
Section 1170.12 ._____ 2, 6.
Section 1192.7 ._____ 6.
Section 1385. _____ 6, 7.
Section 12022.7 ._____ 2, 6, 7.

OTHER

1 Witkin & Epstein, California Criminal Law
(3rd ed. 2000), DEFENSES, § 75, p. 410. ____ 18.

1. | Ivan Nunez
   | Pleasant Valley State Prison
2. | P.O. Box 8502
   | Coalinga, CA.  93210-8502
3. | **CDC ID#: J-40408**
   | **Pro se**
4.
5.
6.
7.
8. | In the UNITED STATES DISTRICT COURT
9. | For the NORTHERN DISTRICT of CALIFORNIA
10.
    | **No.** <u>C-07-2485 JSW (PR)</u>
11. | NUÑEZ, Ivan M.,
12. |      Petitioner,
13. | **vs.**
14. | YATES, James, Warden,                 | **PETITIONER'S TRAVERSE TO**
                                            | **RESPONDENT'S ANSWER ON**
15. |      Respondent.                      | **HABEAS CORPUS.**
                                            | **(28 U.S.C. § 2254.)**
16. | **TO: THE HONORABLE JEFFREY S. WHITE, JUDGE IN THE UNITED**
17. | **STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA**
    | **AND TO THE PARTIES IN THE ABOVE ENTITLED ACTION:**
18. |      **PLEASE TAKE NOTICE** that Petitioner, <u>Ivan M. Nunez</u>, a State
19. | prisoner acting **pro se**, hereby enters his traverse to Respondent's
20. | **answer**, mailed on May 12, 2008.
21. |      Petitioner hereby incorporates **all** papers, exhibits, filings
22. | and the memorandum attached hereto by reference.
23. |      **RESPECTFULLY, SUBMITTED.**
24.
25. | Dated: <u>June 30</u> , 2008            Ivan Nunez
26. |                                        **Pro se**
27. | ///
28. | ///

-1-

**TRAVERSE TO RESPONDENT'S ANSWER TO ORDER TO SHOW CAUSE.**

### I.

### CUSTODY.

Petitioner **DOES NOT AGREE** that he is lawfully in the custody of the California Department of Corrections (and Rehabilitation) ("CDC&R"), Respondent Warden James Yates, at Pleasant Valley State Prison ("PVSP"), Petitioner **DOES AGREE** that he is in custody as a result of a judgment and conviction at jury trial in the Santa Clara County Superior Court on one count of felony battery with serious bodily injury (California Penal Code ("Penal Code"), §§ 242, 243 (d)), and two counts of assault by means of force likely to produce great bodily injury. (Penal Code, § 245, subd. (a)(1).) Petitioner **DOES AGREE** that the jury found the special allegation of great bodily injury to be true (Penal Code, § 12022.7), but he **DOES NOT AGREE** that he was not acting in defense of himself. Petitioner **DOES AGREE** that he admitted he had suffered two prior serious felony "strike" convictions (Penal Code, §§ 667, subd. (a) 667, subd. (b), & 1170.12), and he **DOES AGREE** that he had previously served two prior prison terms (Penal Code, § 667.5, subd. (b)). but Petitioner **DOES NOT AGREE** that the Three-Strikes and 'Yer Out law is Constitutional as being an **ex post facto** law. Petitioner **DOES AGREE** that he was eventually sentenced to State prison for a term of 35-years-to-life, but Petitioner **DOES NOT AGREE** that he is guilty of the charged offenses.

### II.

### VERIFICATION.

Petitioner **DOES AGREE** that he is the person who signed the verification on the Instant Petition for writ of habeas corpus

1. by a person in State custody. (28 U.S.C. § 2254 (a).)

2. ## III.

3. ## PROCEDURAL ISSUES.

4. Petitioner **DOES AGREE** that he made his best possible attempt
5. to exhaust the issues presented to this Court, in the State Courts
6. below. (28 U.S.C. § 2244 (b).) Petitioner **DOES AGREE** that he has
7. timely presented his claims under the Anti-Terrorism and Effective
8. **Death Penalty** Act of 1996 ("AEDPA") statute of limitations. (28
9. U.S.C. § 2244 (d)(1).) Petitioner **DOES NOT AGREE** that the AEDPA
10. statute of limitations does not violate Article I, § 9 of the
11. United States Constitution.

12. ## IV.

13. ## GENERAL AND SPECIFIC DENIALS.

14. Petitioner **DOES NOT AGREE** that Respondent's general denial
15. is specific enough for a response. Petitioner **DOES NOT AGREE** that
16. the State court rulings were not based upon an unreasonable deter-
17. minations of the facts or were contrary to or involved an unreason-
18. able application of clearly established United States Supreme
19. Court precedent. (28 U.S.C. § 2254 (d)(1). Petitioner **DOES NOT**
20. **AGREE** that he did    specifically receive the effective assistance
21. of trial counsel as guaranteed by the Sixth and Fourteenth Amend-
22. ments of the United States Constitution (28 U.S.C. § 2254 (d)(1)
23. & (2); <u>Strickland v Washington</u> (1984) 466 U.S. 668), by trial
24. counsel's failure to call defense witnesses at trial. Petitioner
25. **DOES NOT AGREE** that his right to compulsory process of attendance
26. of defense witnesses under the Sixth and Fourteenth Amendments
27. of the United States Constitution was not violated. (28 U.S.C.
28. § 2254 (d)(1) & (2); <u>Wasnington v Texas</u> (1967) 338 U.S. 14.) Peti-

1.  tioner **DOES NOT AGREE** that his right to compulsory process at

2.  trial was effective assistance of counsel counsel under the Sixth

3.  and Fourteenth Amendments of the United States Constitution. (28

4.  U.S.C. § 2254 (d)(1) & (2); <u>Strickland v Washington</u>, <u>supra</u>, 466

5.  U.S. 668.) Petitioner **DOES NOT AGREE** that his trial counsel was

6.  not representing him in a conflict of interest in violation of

7.  Petitioner's right to effective assistance of counsel under the

8.  Sixth and Fourteenth Amendments of the United States Constitution.

9.  (28 U.S.C. § 2254 (d)(1) & (2); <u>Cuyler v Sullivan</u> (1984) 446 U.S.

10. 335.) Petitioner **DOES NOT AGREE** that the State trial was not in

11. violation of the Sixth and Fourteenth Amedments of the United

12. States Constitution by the failure to correctly instruct his jury

13. on his defense. (28 U.S.C. § 2254 (d)(1) & (2); <u>Stevenson v United</u>

14. <u>States</u> (1896) 162 U.S. 313; <u>Mathews v United States</u> (1988) 485

15. U.S. 58, 63.) Petitioner **DOES NOT AGREE** that any of the above

16. stated Constitutional violations are harmless errors. (28 U.S.C.

17. § 2254 (d)(2); <u>Chapman v California</u> (1967) 386 U.S. 18, 24.) Peti-

18. tioner **DOES NOT AGREE** that he is not entitled to relief on habeas

19. corpus. (28 U.S.C. § 2254 (a).)

20.                                  **V.**

21.                       **LODGED DOCUMENTS**.

22.     Petitioner **DOES NOT AGREE** that Respondent does not have a

23. duty to provide Petitioner with a copy of all lodgments pertain-

24. ing to post-conviction proceedings, which should have been attach-

25. ed to the answer. Petitioner **DOES NOT AGREE** that Respondent has

26. correctly complied with the <u>Rules Governing Habeas Corpus Peti-</u>

27. <u>tions in the Federal District Courts</u> ("<u>Rules</u>" ). (**See** <u>Rule 5</u>;

28. **see also Petitioner's** <u>MOTION FOR PRODUCTIONS OF DOCUMENTS ON HABEAS</u>

-4-

1. CORPUS.) Petitioner therefore **DOES NOT AGREE** with Respondent's
2. rendition of the lodgments in this matter, unless Respondent com-
3. plies with Rule 5.

## VI.

### INCORPORATED BY REFERENCE.

6. Petitioner hereby incorporates by reference the attached memo-
7. randum of points and authorities, all papers filed in this action
8. below, the exhibits, papers and transcribed documents pertaining
9. to hearings held, and all other information for this Honorable
10. Court's correct understanding of the case presented for review.

## VII.

### CONCLUSION.

13. Petitioner respectfully requests that this Honorable Court
14. **GRANT** his **PRAYER FOR RELIEF** attached hereto, all or in part, or
15. otherwise **ORDER** all other relief as justice may require.

16. **RESPECTFULLY, SUBMITTED.**

18. Dated: JUNE 30   , 2008

Ivan Nunez
**Pro se**

20. /;/
21. //.

## STATEMENT OF THE CASE

On June 28, 2004, First Amended Information No. CC329648 was filed in the Superior Court of Santa Clara County, charging petitioner Ivan Mark Nunez with the following felony offenses:

- In count one, battery with serious bodily injury upon Chieu Nguyen (sec. 242/243, subd. (d)); and the infliction of great bodily injury (sec. 667; sec. 1192.7);
- In count two, assault by means of force likely to produce great bodily injury upon Chieu Nguyen (sec. 245, subd. (a) (1)); and the allegation that he personally inflicted great bodily injury in the commission of the offense (sec. 12022.7, subd. (a));
- In count three, assault by means of force likely to produce great bodily injury upon Toan Pho (sec. 245, subd. (a) (1)).

The information further alleged that petitioner had suffered two serious felony prior convictions (sec. 667, subd. (b)- (i); sec. 1170.12; sec. 667, subd. (a)); and two prior prison terms (sec. 667.5, subd. (b)). (Clerk's transcript, pages 106-110, hereinafter cited as CT 106-110.)

Petitioner was arraigned, entered pleas of not guilty, denied the great bodily injury and prior conviction allegations.

---

[1] Unless otherwise specified, all statutory references are to the Penal Code.

-6-

1    (CT 111.)

2    On June 30, 3004, a jury trial commenced. PETiTioNEr

3    admitted the prior conviction allegations. (CT 113; 117.)  On

4    July 12, 1004, the jury commenced deliberations. (CT 141.)

5    On July 13, 2004, the jury returned verdicts finding

6    guilty of all three counts, and finding the great bodily injury

7    allegation in count two to be true. (CT 202.)

8    On September 30, 2004, pETiTioNErs motion to strike the

9    serious felony prior convictions pursuant to section 1385

10   was denied.[2] He was sentenced to a total term of thirty-five

11   years to life imprisonment, as follows: an indeterminate term

12   of twenty-five years to life for the violation of section 245,

13   subdivision (a) (1), in count two; plus ten years for the two

14   serious felony prior convictions (sec. 667, subd. (a).) A

15   twenty-five year to life term for the violation of section 245,

16   subdivision (a) (1), in count three was ordered to be served

17   concurrently with the term in count two; and the term in

18   count one was ordered stayed, pursuant to section 654. The

19   great bodily injury enhancement (sec. 12022.7, subd. (a)) in

20   count two, and the two prior prison terms (sec. 667.5, subd.

21   (b)), were stricken. He was ordered to pay a $10,000

22   restitution fine (sec. 1202.4, subd. (b)); a $10,000 parole

23   revocation fine (sec. 1202.45); and received presentence

24   custody credits of 404 days, including 352 actual days, plus

25   _____

26   [2] See *People v. Superior Court (Romero)* (1996) 13 Cal.4th

27   497.

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

1    52 days conduct credits. (CT 394-396.)

2        Appellant filed notice of appeal on October 19, 2004.

3    (CT 398.)

4

5        **On March 25, 2005** Petitioner's OPENING BRIEF was filed

6    in the California Court of Appeal, Sixth Appellate District

7    (People v Nunez (6th App. Dist. #H028072), which is evinced

8    in Respondent's Exhibit 3, while the State's brief in opposition

9    is in evidence as Respondent's Exhibit 4, while Petitioner's

10   REPLY BRIEF is evinced in Respondent's Exhibit 5.

11       On October 12, 2005 the State Appellate Court affirmed

12   judgment of conviction and sentence in an unpublished opinion,

13   which is in evidence as Respondent's Exhibit 6.

14       On November 15, 2005 Petitioner filed for a PETITION FOR

15   REVIEW with the California Supreme Court, and on December 21,

16   2005 the California Supreme Court declined to review

17   Petitioner's claims. (People v Nunez (Cal. Supreme Ct.

18   #S38858).) Respondent has evinced these filings as Exhibit 7

19   and Exhibit 8, respectively.

20       Shortly thereafter, Petitioner caused to be filed a

21   PETITION FOR WRIT OF HABEAS CORPUS in the Santa Clara County

22   Superior Court (In re Nunez (Santa Clara Co. Sup. Ct.

23   #CC329648), which application was **summarily denied** by the

24   Superior Court. Respondent has set forth in evidence these

25   filings as Exhibit 9.

26       On August 17, 2006 Petitioner caused to filed a PETITION

27   FOR WRIT OF HABEAS CORPUS with the California Court of Appeals,

28   Sixth Appellate District, which was **summarily denied** six days

-8-

1.   later on August 23, 2006 which Respondent has evinced as <u>Exhi</u>-
2.   <u>bit 10</u> and <u>Exhibit 11</u> respectively.

3.        On September 20, 2006 Petitioner caused to be filed an appli-
4.   cation for <u>PETITION OF WRIT OF HABEAS CORPUS</u> into the California
5.   Supreme Court, which was **summarily denied** by that Court on
6.   March 28, 2007. Respondent has evinced these applications in
7.   <u>Exhibit 12</u> and <u>Exhibit 13</u> respectively.

8.        This Court has jurisdiction over the exhausted claims in
9.   this matter under 28 U.S.C. § 2254 (a).

10.   ///

11.   ///

12.

13.

14.

15.

16.

17.

18.

19.

20.

21.

22.

23.

24.

25.

26.

27.

28.

# STATEMENT OF FACTS

### . *Prosecution case*:

On the morning of October 14, 2003, Chieu Nguyen and Toan Pho were working as crossing guards at August Boger Middle School, at the intersection of Marten Avenue and Mt. Rushmore in San Jose. They wore uniforms with badges on the jackets and caps bearing the words, "San Jose Police Crossing Guard," and hand-held "Stop" signs. (RT  59; 139.) Ngyuen was forty-eight years old, five feet, six inches tall, and weighed 116 pounds. (RT 77-78.) Pho was fifty-seven years old, five feet, seven inches tall, and weighed 120 pounds.[3] (RT 159-161.)

Nguyen and Pho, standing on opposite sides of the street, held up their "Stop" signs as students crossed the street. PETiTiONErs car approached the intersection, slowed down, but did not stop. The car started to make a right turn. The driver's side windshield of the car made contact with Nguyen's "Stop" sign. Nguyen told PETiTiONEr to back up. (RT 65-71; 144-146.)

PETiTiONEr got out of his car. He looked angry, and Nguyen ran to the sidewalk. (RT 72-73.) PETiTiONEr chased

---

[3] At trial, Nguyen and Pho described appellant as much taller and bigger than them. (RT 78; 159.)

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV 3-95)

him, struck him in the chest, grabbed him in a bear hug, picked him up, and threw him to the ground. Nguyen's head struck the ground and he lost consciousness. (RT 73; 102-103.)

Pho ran to Nguyen and yelled at PETiTioNEr to stop, and tried to strike PETiTioNEr with his "Stop" sign.[4] struck Pho in the throat, got back in his car and drove away. (RT 108-110; 149.)

Nguyen was transported to the hospital by ambulance. He suffered a contusion to the back of his head, a subdural hematoma within his skull, and a fractured rib. (RT 211-213; 235.)

Police went to PETiTioNErs residence on the afternoon of October 14, 2004. They located PETiTioNErs car, but did not attempt to contact the occupants. Late that night, they surrounded the residence. Appellant looked out the window but did not come outside until police used a loudspeaker to order him to come outside. (RT 355-357.)

Police interviewed PETiTioNEr on October 15, 2003. After he was informed of his *Miranda*[5] rights, PETiTioNEr stated that

---

[4] At trial, Nguyen and Pho both testified that they did not strike appellant with their "Stop" signs, but Pho stated that he tried to strike appellant before appellant hit him in the throat. Danny Hernandez, a middle school student who witnessed the incident, testified that Nguyen did not try to hit appellant with the sign, but Pho tried to do so before being struck by appellant. (RT 79; 110; 149.)

[5] *Miranda v. Arizona* (1966) 384 U.S. 436.

-11-

he got out of his car after the crossing guard struck his vehicle with a "Stop" sign. PETITIONEr stated that the two crossing guards tried to strike his head with their "Stop" signs. Nguyen fell to the ground. PETITIONEr denied striking Nguyen, but admitted striking Pho in the throat with a palm strike. He was trying to block and evade the attack by the crossing guards.[6] (RT 322; 333-334; 338-339 -340.)

Police inspected pETiTiONEr car. There were no scratches on the vehicle, but the license plates were missing, and a fictitious license plate was on the back of the car. PETiTiONErhad no injuries but his hands were swollen. (RT 257; 322-323; 355-356.)

### . *Defense case*:

PETiTiONErs defense was self-defense. Shiela Carillo, who witnessed the incident, saw a man struggling with a crossing guard. The man got into a car and drove away. Carillo, who was driving in the same direction, saw the car parked several blocks away about ten minutes later. (RT 475; 481-482.)

Pho was interviewed by Officer Biskup after the incident. Pho told Officer Biskup that both crossing guards blew warnings with their whistles and raised their "Stop" signs when appellant's car refused to stop. Pho stated that

---

[6] Appellant's tape-recorded interview was played to the jury at trial. (RT 256; People's Exhibit #12.)

PETITIONER made a U-turn, parked, approached Nguyen, hit him in the face, threw him to the ground, and hit him multiple times in the chest. Pho ran towards PETITIONER to stop him, and PETITIONER punched him in the throat. (RT 499-500.)

In closing argument, PETITIONER trial counsel told the jury that there was no medical testimony that Nguyen was injured in this incident; the medical testimony was only that his injuries were of "recent origin." Nguyen could have sustained the injuries by falling on his "Stop" sign. PETITIONER and Pho were engaged in mutual combat, and PETITIONER struck Pho in the throat in self-defense. Danny Hernandez testified that Pho held his "Stop" sign up, contradicting Pho's testimony that he held the sign behind his back, and appellant could have reasonably believed Pho intended to strike PETITIONER with the sign. (RT 560-561; 571.) Nguyen received only "diagnostic" procedures, but no medical treatment, and was released from the hospital after two days.[7] (RT 562-564.)

---

[7] The evidence was uncontroverted that Nguyen lost consciousness and suffered a broken rib, both of which constitute serious bodily injury as defined by statute. (Sec. 243, subd. (d): CALJIC No. 9.12.)

## ARGUMENT

I.

## THE TRIAL COURT ERRED PREJUDICIALLY BY FAILING TO INSTRUCT THE JURY PURSUANT TO THE REVISED VERSION OF CALJIC NO. 5.54, WHICH AFFORDS AN AGGRESSOR THE RIGHT TO SELF-DEFENSE WHEN CONFRONTED BY A SUDDEN, DEADLY ATTACK; THE ERROR REQUIRES REVERSAL OF COUNT THREE.

### . *Factual and procedural background*:

PETITIONEr was convicted in count three of assault by means of force likely to produce great bodily injury (sec. 245, subd. (a)(1)), upon Toan Pho, who came to the aid of Chieu after the initial altercation. According to Danny Hernandez, the only independent eyewitness who testified at trial, Pho ran towards petitioner with his metal "Stop" sign raised. Pho admitted during his trial testimony that he was attempting to hit petitioner with the sign when petitioner struck him in the throat. (RT 79; 110; 148.)

When petitioner was interviewed by police, he stated that he tried to ward off attempts to strike him with the "Stop" signs, and struck Pho in the throat in self-defense. (RT 322; 333-334; 338-339 – 340.)

-14-

1    Over Petitioner'sobjection (RT 449), the trial court
2    instructed the jury pursuant to CALJIC No. 5.54.1, as follows:

3

4        The right of self-defense is only available to a
5        person who initiated an assault if he has done all
6        the following:
7        1. He has actually tried, in good faith, to refuse to
8        continue fighting.
9
10       2. He has clearly informed his opponent, by either
11       words or conduct, that he wants to stop fighting;
12       and
13       3. He has clearly informed his opponent, by either
14       words or conduct, that he has stopped fighting.
15       After he has done these three things, he has the
16       right to self-defense if his opponent continues to
17       fight. (CT 188; RT 523.)

18

19   The trial court failed to include in the instruction the
20   language of the 2004 revision to CALJIC No. 5.54, which adds
21   the following alternative language:

22

23       Or, if the victim of simple assault responds in a
24       sudden and deadly counterassault, the original
25       aggressor need not attempt to withdraw and may
26       use reasonably necessary force in self-defense.
27

1  The prosecutor capitalized on the error in closing

2  argument, relying upon the erroneous instruction to convince

3  the jury that appellant had no right of self-defense against

4  Pho.   The error therefore requires reversal of appellant's

5  conviction of assaulting Pho in count three.

6

7

8  **.  *Applicable law and standard of review*:**

9

10  A trial court has the *sua sponte* duty to instruct on the

11  general principles of law relevant to the issues raised by the

12  evidence. (*People v. Wickersham* (1982) 32 Cal.3d 307, 323.)

13  This duty is not always satisfied by merely reading wholly

14  correct, requested instructions. (*People v. Sanchez* (1950)

15  35 Cal.2d 522, 528.) Even if not requested by the defendant,

16  the court must give instructions on a defense if supported

17  by substantial evidence and is not inconsistent with the

18  theory of the defense. (*People v. Barraza* (1979) 23 Cal.3d

19  675, 691; *People v. Sedeno* (1974) 10 Cal.3d 703.) "Included

20  within this duty is the... obligation to instruct on defenses...

21  and on the relationship of these defenses to the elements of

22  the charged offense..." (*People v. Stewart* (1976) 16 Cal.3d

24  133, 140.)

25  In determining whether substantial evidence supports an

26  instruction, the trial court may not evaluate the credibility of

-16-

1  witnesses. That task is for the jury. (*People v. Breverman*
2  (1998) 19 Cal.4th 142, 162.) "However incredible the
3  testimony of a defendant may be he is entitled to an
4  instruction based upon the hypothesis that it is entirely
5  true." (*People v. Carmen* (1951) 36 Cal.3d 768, 773, original
6  italics.)

7      The failure to instruct can be raised on appeal despite
8  the lack of an objection or request for further instruction if
9  the error affected the substantial rights of the defendant.
10  (*People v. Flood* (1998) 18 Cal.4th 470, 482, fn. 7; *People v.*
11  *Carpenter* (1997) 15 Cal.4th 312, 381.)

## .   *The trial court erred by failing to include the language of the 2004 revision of CALJIC No. 5.54 in its instruction on self-defense by an aggressor:*

18      CALJIC No. 5.54 was revised in 2004 in response to
19  *People v. Quach* (2004) 116 Cal.App.4th 294. (See CALJIC No.
20  5.54, Use Note, 2004 revision; see also *People v. Gleghorn*
21  (1987) 193 Cal.App.3d 196, 201; *People v. Sawyer* (1967)
22  256 Cal.App.2d 66, 75.)

23      The *Quach* court held:

      CALJIC No. 5.56 is the instructional manifestation of
      Penal Code section 197, which provides that self-
      defense is available to an assailant or mutual

-17-

combatant if he first "really and in good faith [has] endeavored to decline any further struggle before the homicide was committed." Somehow, the instruction transmogrified the requirement of a good faith endeavor to decline further combat into a categorical denial of the defense to anyone who has not *succeeded* in clearly informing his opponent that he is no longer fighting and wishes to stop. At least that is how we read the three requirements which follow the requirement of "trying in good faith to refuse to continue fighting" in the instruction, and we cannot find such a rule in Penal Code section 197. See *People v. Hernandez* (2003) 111 Cal.App.4th 582, 589, 3 Cal.Rptr.3d 586 [describing this instruction and CALJIC No. 5.54 as "at least ambiguous"].

Nor can we find any mention in the instructions given in this case of the rule that, "Where the original aggressor is not guilty of a deadly attack, but of a simple assault or trespass, the victim has no right to use deadly or other excessive force.... If the victim uses such force, the aggressor's right of self-defense arises...." (1 Witkin & Epstein, Cal.Criminal Law (3d ed.2000), Defenses § 75, p. 410), or its corollary, "If, however, the counter assault be so sudden and perilous that no opportunity be given to decline or to make known to his adversary his willingness to decline the strife, if he cannot retreat with safety, then as the greater wrong of the deadly assault is upon his opponent, he would be justified in slaying, forthwith, in self-defense." (*People v. Hecker* (1895) 109 Cal. 451, 463- 464, 42 P. 307.) (*People v. Quach, supra,* 116 Cal.App.4th at pp. 301-302.)

13

PETITIONER'S defense to count three, the assault upon Pho, was that Pho charged him with a metal "Stop" sign after the initial altercation with Chieu. The defense was supported by substantial evidence, including Danny Hernandez's testimony that Pho approached with the metal sign raised up, Pho's admission that he was trying to strike PETITIONER with [Adding] ⟵(R.T. 110, 148 ). the metal sign, and PETITIONER'S statement to police that he was trying to ward off the blows when he struck Pho in the [Adding] ⟵ (R.T. 560 – 571.) (R.T. 333-334; 338-339-340) throat. Even if "less than convincing," a defendant's testimony requires instruction on any issue presented by that testimony. (*People v. Turner* (1990) 50 Cal.3d 668, 690; *People v. Melton* (1988) 44 Cal.3d 718, 747.)

Even if PETITIONER were the aggressor in the initial assault upon Chieu, he was not required to withdraw from the mutual combat with Pho, and communicate his desire to stop fighting. Even a mutual combatant has the right to defend himself against a sudden potentially deadly attack without attempting to withdraw from the fight. "[W]hen [a combatant] responds in a sudden and deadly counter attack, the [other combatant] need not attempt to withdraw and may use reasonably necessary force in self-defense." (*People v. Gleghorn, supra,* 193 Cal.App.4th 196, 201.)

By omitting the additional language of the 2004 revised version of CALJIC No. 5.54, the trial court failed to inform the jury of this principle, which was critical to PETITIONER'S defense

14

because his claim of self-defense was based upon evidence that Pho escalated a weaponless mutual combat into a potentially deadly assault with a metal sign. "A jury is entitled to instructions pertaining to the particular facts of the case being tried. [Citation.] Defendant's fate, therefore, should not rest on abstract generalizations. [Citation.]" *People v. Pena* (1984) 151 Cal.App.3d 462, 474-475.)    The self-defense instructions in petitioners case, while correct in stating abstract generalizations about the law, failed to advise the jury on a critical point raised by the evidence.

The trial court had a *sua sponte* duty to instruct on the defense, even absent petitioners request. (See *People v. Barraza, supra*, 23 Cal.3d 675 [The Supreme Court held that even though the defendant did not request instructions on entrapment, and did not argue the defense to the jury, the trial court erred in failing to instruct on the defense on its own motion, where it was supported by substantial evidence and not inconsistent with the defense.])

The defense that petitioner had a right to self-defense when confronted with a sudden, potentially deadly counter attack was not inconsistent with the defense; on the contrary, the prosecutor went out of his way, in closing argument, to dissuade the jury from the notion that petitioner acted in self-defense. (See Part D, *infra*.)  The instruction would have informed the jury that petitioner had no duty to

-20-

withdraw and could rely on self-defense it he reasonably believed Pho was about to strike him with a metal sign. The trial court therefore erred by failing to instruct the jury, sua sponte, with the 2004 revision of CALJIC No. 5.54.

## . *The error was prejudicial, requiring reversal*

The failure to instruct on a defense supported by substantial evidence requires reversal unless "the factual question posed by the omitted instruction was necessarily resolved adversely to the defendant under other, properly given instructions." (*People v. Sedeno, supra,* 10 Cal.3d at p. 721 (overruled on other grounds in *People v. Breverman, supra*, 19 Cal.4th 142.)[8]

In *People v. Quach, supra,* 116 Cal.App.4th 294, the Court of Appeal held that the instructional error at issue here required reversal. The *Quach* court concluded: "CALJIC No. 5.56, which affords the right of self-defense to a mutual combatant only after, inter alia, he has informed his opponent that he has stopped fighting and given his opponent the opportunity to stop. As *Quach* points out, this is error, and it is error closely tied to the facts of this case. **The jury**

[8] *Breverman* overruled *Sedeno's* reversal standard as applied to the failure to instruct on lesser included offenses, but

could quite reasonably have concluded this was a mutual combat situation. If they did so, they would likely have referred to CALJIC No. 5.56 for the test to be applied, and been misinformed on the crucial test to be applied to such facts. (*Id.* at pp. 300-301, emphasis added.)

The prosecutor repeatedly capitalized on the error in closing argument, using CALJIC No. 5.54 to argue that appellant had no right of self-defense because he was the initial aggressor, that he had to first retreat, and failed to do so:

- If Mr. Pho's coming to Mr. Nguyen's defense and the defendant is aggressive, he cannot claim self-defense when he strikes Mr. Pho in the throat **under this instruction.** (RT 450, emphasis added.)
- I think we have a situation where the defendant is claiming self-defense and I think it's reasonable to interpret he was the aggressor in the situation. (RT 451.)
- [W]hen you run into a fight there is no self-defense when you're the aggressor. The person who starts the

---

limited its ruling to "this context." (*People v. Breverman, supra,* 19 Cal.4th at p. 165.)

fight doesn't get to claim self-defense. And that's what the defendant did. (RT 534.)

The prosecutor's argument thus reinforced the erroneous instruction that pETiTiONEr was foreclosed from acting in self-defense in count three unless he first withdrew and communicated his withdrawal to Pho.

As in *Quach*, the erroneous instruction *required* the jury to reject the claim of self-defense based upon the facts relied upon by pETiTiONEr: "While it is not our province to decide whether these were the facts in this case, they were certainly the facts Quach argued, and we have searched in vain for anything in the instructions given in this case which would have helped the jury arrive at a verdict if they accepted that version of the facts. **Indeed, CALJIC No. 5.56 would have seemed to most people rather clearly to reject a self-defense claim founded on that argument."** (*Id.* at p. 302, emphasis added.)

No other instruction in pETiTiONErS case permitted the jury to find that pETiTiONEr was entitled to act in self-defense in count three, if he was engaged in mutual combat and faced with a sudden deadly assault. Reversal of pETiTiONErS conviction is therefore required under the *Sedeno* standard.

18

Alternatively, reversal is required under the *Chapman*[9] standard. The due process, compulsory process and trial by jury clauses of the 5th, 6th and 14th amendments to the federal constitution mandate that "as a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." (*Mathews v. United States* (1988) 485 U.S. 58, 63;  citing *Stevenson v. United States* (1896) 162 U.S. 313;  see also *United States v. Escobar de Bright* (9th Cir. 1984) 742 F.2d 1196, 1201-1202.) "[T]he principle [is] established in American Law... that a defendant is entitled to a properly phrased theory of defense instruction if there is some evidence to support that theory..."]. (*Viriglio v. State (Wyoming)* (1992) 834 P.2d 1125, 1130; see also *United States v. Kenny* (9th Cir. 1981) 645 F.2d 1323, 1337.)  "[T]he failure to include an instruction of the petitioners theory of the case... would deny the defendant a fair trial. [Citation.]" (*United States v. Hicks* (4th Cir. 1984) 748 F.2d 854, 857-858.)

Instructing the jury to ignore evidence which is relevant to deciding issues presented by the evidence unconstitutionally dilutes the standard of proof beyond a reasonable doubt. (*Cool v. United States* (1972) 409 U.S. 100, 104 ["By creating an artificial barrier to the

---

[9] *Chapman v. California* (1967) 386 U.S. 18.)

19

consideration of relevant defense testimony... the trial judge reduced the level of proof necessary for the government to carry its burden."])

The *Quach* court also held that reversal was required under the *Chapman* standard, applicable to federal constitutional errors: "Application of the *Chapman* test still requires reversal. We cannot be convinced beyond a reasonable doubt that no jury could have adopted Quach's version of the facts. Several accounts of the fray indicate the initial confrontation was escalated when a TRG member pulled or fired a gun and that Quach may have responded to that provocation. At least one version had the gun fired *at Quach* before he took out his own pistol. He was entitled to an instruction that would have enabled the jury to render a verdict in accordance with such facts." (*People v. Quach, supra,* 116 Cal.App.4th at p. 303.)

A reviewing court cannot determine, beyond a reasonable doubt, that no jury could have accepted petitioners version of the facts as applied to count three. Reversal is therefore also required under the *Chapman* standard.

II.

**INEFFECTIVE ASSISTANCE OF COUNSEL, TRIAL COUNSEL**
**FAILED TO COMPEL ATTENDANCE OF WITNESSES CRUCIAL FOR**
**PETITIONER'S DEFENSE.**

At Petitioner's June 30, 2004 jury trial, his trial counsel failed to subpoena and compel the attendance of Ms. DONNA PADRON, SHEILA CARRILLO, OFFICER BISKUP, AND OFFICER ARDIZZONE.

Ms. PADRON made statements concerning the actions of crossing guard #1 to Officer ARDIZZONE that were favorable and essential for Petitioner's defense. Ms. PADRON's attendance and testimony was necessary at Petitioner's jury trial to corroborate the statement made by NGUYEN to Officer ARDIZZONE. (See **Resp.'s** Lodgment #12, Exhibit A.)

Officer BISKUP's attendance and testimony at Petitioner's jury trial because he was the Officer who initially wrote down the Police Report and he was needed to corroborate PHO's (Victim #2) statements made in that Report. PHO had testified completely opposite to what he had originally stated to Officer BISKUP. (See **Resp.'s** Lodgment #12, Exhibit B; **compare with** C.T., p. 59, line 27-28; pp. 60, 61, & 62, lines 1-6, p. 67, lines 7-10; R.T., pp. 182-204, 222-224.)

The trial court also excluded another favorable witness, whose testimony as necessary to impeach previous testimony and witnesses. The trial court made that witness unavailable without first exhausting all other available remedies not harmful to Petitioner.

The testimony of Ms. CARRILLO was crucial and necessary to test the credibility of the alleged victims whose testimony was

-26-

1. entirely different to what she saw. (See Resp.'s Lodgement #12,
2. Exhibit C; C.T., pp. 29-44.)

3. Petitioner strongly believes that his trial counsel was inef-
4. fective and incompetent, denying him a known and potentially meri-
5. torious defense, when trial counsel failed to secure the attendance
6. and testimony of the above mentioned witnesses.

7. Petitioner also believes that the testimony of Ms. PADRON
8. would have been helpful in his defense, and if presented profes-
9. sionally to Petitioner's jury, the testimony would have persuad-
10. ed his jury that Petitioner as acting in self-defense at the time
11. of the alleged incident, and the outcome of the trial would have
12. been different.

13. Petitioner further believes that this error prejudiced his
14. trial because the jury did not have an opportunity to hear all
15. of the facts of his defense before making a decision on his guilt
16. at trial.

17. The Sixth Amendment of the United States Constitution, as
18. ell as Article I, Section 1, of the California Constitution, re-
19. quires that a criminal defense counsel diligently represent his
20. client, as ell as the active participation in the full and effec-
21. tive participation in the client's case. A criminal defense attor-
22. ney has a duty to investigate all defenses of facts and of law
23. that may be available to the defendant. This obligation includes
24. conferring with the client without undue delay and as necessary
25. to elicit matters relating to the defense. (People v Vest (1974)
26. ) 43 Cal.App.3d 728.) This defense is not a base, bare minimum
27. defense. This is rather the effective assistance of a competent
28. counsel. Specifically, it entitles the criminal defendant to rea-

27

1. sonably competent assistance of an attorney acting as his diligent
2. and conscientious advocate.

3.     "Defense counsel has an obligation to investigate all
4.     defenses, explore the factual bases for defenses, and
       research the applicable law. If counsel's fails to
5.     perform the obligation results in the withdrawal of
       a potentially meritorious defense, the defendant has
6.     not had the assistance to which he is entitled. (People
       v Maguire (1998) 67 Cal.App.4th 1022.)

7.     Also, the right to call witnesses in order to present a mean-
8. ingful defense at a criminal trial is a fundamental Constitutional
9. Right, secured by the Compulsory Process Clause of the Sixth Amend-
10. ment, as well as the Due Process Clause of the Fourteenth Amend-
11. ment. (Washington v Schriver (2nd Cir.2001)  255 F.3d 45.)

12.     "[A] defendant's right to due process and compulsory process
13. includes the right to present witnesses in his or her own defense."
14. (United States v Powell (10th Cir.2000) 226 F.3d 1181; citing
15. Ricnmond v Embry (10th Cir.1997) 122 F.3d 866, 871; Washington
16. v Texas, supra, 388 U.S., at p. 18 ["The right to offer the
17. testimony of witnesses... is in plain terms the right to present
18. a defense..."]; United States v Bautista (10th Cir.1998) 145 F.3d
19. 1140, 1151 [the right to present a defence is a fundamental element
20. of due process of law] (internal quotation omitted). Nonetheless,
21. restrictions upon a defendant's ability to present witnesses are
22. permissible, and in determining whether "the trial court's exclusion
23. of the proffered evidence violated [the defendant's] right to
24. present witnesses testimony", we conduct a two-part inquiry. First
25. we examine "whether the State's interest in excluding the evidence
26. outweighed [the defendant's] interest in its admittance." Richmond,
27. 122 F.3d, at 872 [emphasis added]. "The inquiry includes an
28. examination as to whether more traditional factors such as

-28-

1   prejudice, issue and jury confusion weigh in favor of excluding

2   the testimony." <u>Id</u>. Second, "we examine whether the excluded

3   testimony was material—whether it was of such an exculpatory

4   nature that its exclusion affected the trial's outcome." <u>Id</u>.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

III.

**THE RIGHT TO COMPULSORY PROCESS AS GUARANTEED BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION WAS DENIED BY TRIAL COUNSEL.**

On June 30, 2004, in the midst of Petitioner's jury trial, Petitioner noticed that his trial counsel was going to rest the case, without challenging any witnesses for the defense, specifically Ms. DONNA PADRON, who made the statements to the Police that she saw Mr. CHIEU NGUYEN, the first crossing guard, swinging a big metal sign or hand-held sign, at Petitioner's head. Petitioner believes that his trial counsel's failure to present witnesses favorable to his defense was arbitrary and prejudicial because it denied him the opportunity to participate fully and fairly in the adversarial fact-finding process, and that this failure constituted ineffective assistance of counsel which was also a violation of fundamental fairness.

Petitioner also believes that if the witness who was material and favorable for his defense would have been allowed to testify it would have effected the outcome of his jury trial.

The right to call witnesses in order to present a meaningful defense at a criminal trial is a fundamental Constitutional Right secured by the Compulsory Process Clause of the Sixth Amendment, and the Due Process Clause of the Fourteenth Amendment.

The Compulsory Process Clause grants a defendant the right to call witnesses that are material and favorable to his defense.

(Wong v Money (6th Cir.1998 ) 142 F.3d 313; see also McGregor v Gibson (10th Cir.2000) 219 F.3d 1245; Boyd v Ward (10th Cir.1999) 179 F.3d 904; Washington v Texas (1967) 338 U.S. 14, 19.)

The Compulsory Process Clause entitles the defendant to both the right to governmental assistance in compelling the attendance of favorable witnesses at trial, and the right to put before a jury the evidence that might influence the determination of guilt. (<u>United States v Shay</u> (1st Cir.1995) 57 F.3d 126.)

The Petitioner's Constitutional Right to Compulsory Process was abridged, for example, when his trial counsel failed to secure the appearance at trial of witnesses whose testimony was materially favorable to the defense. (<u>United States v Williamson</u> (7th Cir. 2000) 202 F.2d 974.)

Petitioner's defense was meritorious and the witness was material and favorable to this defense, so there was no tactical reason for their omission. (28 U.S.C. § 225 (d)(1) & (2); <u>Strickland v Washington</u>, <u>supra</u>, 466 U.S. 668.)

Claims of ineffective assistance of counsel, whether trial or appellate, are mixed questions of law and fact which are reviewed **de novo.** (<u>Boyd v Ward</u>, <u>supra</u>, 179 F.3d, at p. 913; <u>Miller v Champion</u> (10th Cir.1998) 161 F.3d 129, 1254 [applying AEDPA deferential review standards]; <u>Newsted v Gibson</u> (10th Cir.1998) 158 F.3d 1085, 1090 [appellate counsel].) To establish ineffective assistance of counsel, a petitioner must prove that counsel's performance was constitutionally deficient and that counsel's deficient performance prejudiced the defense, depriving the petitioner of a fair trial with a reliable result. (See <u>Strickland v Washington</u>, <u>supra</u>, 466 U.S. 687; **see also** <u>Taylor v Singletary</u> (11th Cir.1997) 122 F.3d 1390.)

The accused has a fundamental right to present witnesses in his own defense and that right is essential to due process.

1  (Chambers v Mississippi (1973) 410 U.S. 284.)

2     Petitioner is entitled to relief is there is a "reasonable

3  probability" that the error complained of contributed to an

4  erroneous verdict or violated his Constituional Rights. (United

5  States v Bagley (1985) 473 U.S. 667; United States v Valenzuela-

6  Bernal (1982) 458 U.S. 858, 874.) Geverally, this is when the

7  error complained of "undermined the confidence" in the jury

8  verdict. (Kyles v Whitley (1995) 514 U.S. 419, 434-435.)

9     Criminal defendants have a Sixth Amendment Right under the

10 Confrontation Clause to directly encounter hostile prosecution

11 witnesses. (Pointer v Texas (1965) 380 U.S. 400, 403; citing

12 Sixth Amendment, U.S. Const.; Maryland v Craig (1990) 497 U.S.

13 830, 846 ["[f]ace-to-face confrontation enhances the accuracy

14 of factfinding by reducing the risk that a witness will wrongful-

15 ly implicate an innocent person"]; Coy v Iowa (1988) 487 U.S.

16 1012, 1019 ["It is always more difficult to tell a lie about

17 a person 'to his face' than 'behind his back'"].)

18    The Confrontation Clause protects a criminal defendant's

19 right to cross-examine adverse witnesses and provides for the

20 "opportunity [to] cross examine]," (Delaware v Fensterer (1985)

21 474 U.S. 15, 20 (per curiam); the Clause is not violated by a

22 defendant's failure to cross-examine a witness. (United States v

23 Marbella (9th Cir.1996) 73 F.3d 1508, 1513.) But, generally, the

24 Confrontation Clause was designed to promote the truth-finding

25 function of trial and is ranked as being a fundamental right.

26 (See Kentucky v Stincer (1987) 482 U.S. 730, 737; United States

27 v Hamilton (7th Cir.1997) 107 F.3d 499, 503 [Confrontation Clause

28 allows trier of fact to observe witnesses' demeanor, impress

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

1 | witness with seriousness of the matter before them, assures the
2 | identity of witnesses, and assures that the witness is testifying
3 | from memory and not from notes or being coached or coerced.)

4 |     Counsel's failure to follow through with this fundamental
5 | right was a denial of effective assistance at trial.

IV.

PETITIONER'S SIXTH AMENDMENT RIGHT TO CONFLICT-FREE REPRESENTATION AS GUARANTEED BY THE UNITED STATES CONSTITUTION WAS VIOLATED AND WAS THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

On or about May of 2004, Petitioner's defense counsel related to him the fact that he was having difficulties getting fully paid for his services and that he needed additional funds to continue with the investigation and for locating favorable defense witnesses. Trial counsel was hired by Petitioner's brother, who did not have the additional funds readily available. (Resp.'s Lodgment #12, Exhibit B (R.T., pp. 409-410.)

This fiscal difficulty was brought to the trial court's attention at a later time (as well as on a collateral application), but did the court did not address the issue and left Petitioner's (conflicted counsel) to continued to represent him without a proper inquiry into the extent of this conflict, nor an investigation qof the prejudicial aspects of the conflict.

Petitioner believes that monetary (fiscal) conflict of interest had an adverse effect on counsel's performance because the conflict prevented the defense counsel from conducting an adequate investigation, and from locating potentially favorable witnesses. Petitioner further believes that if this conflict of interest would never have existed in the first place, his counsel would have been able to locate Ms. DONNA PADRON. (See Resp.'s Lodgment #12, Exhibit A.) This witness was the sole witness in Petitioner's favor whose testimony

COURT PAPER
STATE OF CALIFORNIA

1 would have persuaded the jury to reach a different.

2    The Constitution guarantees effective assistance of counsel
3 and implies the correlative right to representation free of the
4 conflict of interest. (<u>People v Bonin</u> (1989) 47 Cal.3d 808; **see**
5 <u>People v Dancer</u> (1996) 45 Cal.4th 1677; <u>Burden v Zant</u> (9th Cir.
6 1989) 871 F.2d 956; <u>People v Hardy</u> (1992) 2 Cal.4th 86.)

7    Representation of a criminal defendant by an attorney
8 burdened by a prejudicial conflict of interest constitutes
9 a Constitutionally defective denial of the effective assistance
10 of counsel under the Sixth Amendment. (<u>United States v Calabria</u>
11 (E.D. Pa. .1985) 614 F.Supp. 187.)

12    Representation by counsel with an actual conflict of inter-
13 est is Constitutional error and requires automatic reversal
14 of the conviction. (<u>United States v Anderson</u> (W.D. Wash.1992)
15 790 F.Supp. 231; <u>United States v Morris</u> (N.D. Tex.1992) 785
16 F.Supp. 1238; <u>Stephans v United States</u> ( Cir.1979) 595 F.2d
17 1060.)

18    It is an attorney's duty to protect his client in every
19 possible way, and it is a violation of that duty for the attor-
20 ney to assume a position adverse or antagonistic to his client.
21 (<u>Leversen v Superior Court</u> (1983) 34 Cal.3d 530; **see also** <u>Uhl</u>
22 <u>v Municipal Court</u> (1974) 37 Cal.App.3d 584; <u>United States v</u>
23 <u>Soldevila-Lopez</u> ( 1st Cir.1994) 17 F.2d 480.)

24    Petitioner's defense counsel labored under conflict of
25 interest at Petitioner's trial proceedings. Defense counsel
26 was put into a situation where he breached the duty of loyalty
27 and his ethical obligation at all stages of the proceedings,
28 the most basic duties of trial counsel were subverted. Moreover,

1  it is very difficult, if not impossible, to accurately measure

2  the precise effect of the deficient representation and corrup-

3  tion by this conflicting interest. (<u>Cuyler v Sullivan</u> (1980)

4  446 U.S. 335.)

5      Ineffective assistance is also presumed when counsel "acti-

6  vely represented conflict of interest." (<u>United States v Gulub</u>

7  (10th Cir.1980) 638 F.2d 185; <u>Flanagan v United States</u> (1984)

8  465 U.S. 268.)

9      A conflict of interest has Constitutionally detrimental

10  effects before a trial, just as during trial "because of what it

11  tends to prevent the attorney from doing." (<u>Halloway v Arkansas</u>

12  (1978) 435 U.S. 489.)

13      The fact that a lawyer or law firm may be attempting in

14  good faith to diligently represent clients with conflicting

15  interest does not ameliorate the evil. (<u>Victor Corp. v Broidy</u>

16  (1983) 143 Cal.App.3d 878; *See also* <u>Acaves v Superior Court</u>

17  (1996) 51 Cal.App.4th 684.)

18

19

20

21

22

23

24

25

26

27

28

COURT PAPER
STATE OF CALIFORNIA
STD. 113 (REV. 3-95)

PRAYER FOR RELIEF.

I, Ivan NUNEZ, am the Petitioner, a state prisoner in pro se and I hereby PRAY THE COURT to DECLARE that he is entitled to the following relief on habeas corpus:

1. DECLARE that Petitioner was entitled to sua sponte jury instructions under the facts of the case and the laws on his defense of self-defense (CALJIC No. 5.54), and DECLARE that the failure to so instruct is a violation of fundamental fairness at trial, and DECLARE that the failure to instruct Petitioner's jury was a violation of the liberty interest provided by law (Penal Code, § 197), and DECLARE that Petitioner's right to set forth a defense as guaranteed by the Sixth Amendment, U.S. Constitution was violated by the above stated failures;

2. DECLARE that Petitioner's trial counsel failed to provide him with the effective assistance of counsel at trial in violation of the Sixth Amendment, U.S. Constitution, by failing to compel the attendance of witnesses crucial to Petitioner's defense;

3. DECLARE that Petitioner's trial counsel failed to provide him with the effective assistance of counsel at trial in violation of the Sixth Amendment, U.S. Constitution, by failing to present witnesses favorable to his defense as guaranteed by the Compulsory Process Clause of the Sixth Amendment, U.S. Constitution, in denial of fundamental fairness;

-37-

1      4. DECLARE that Petitioner's trial counsel failed to

2  provide him with the effective assistance of counsel

3  at trial in violation of the sixth Amendment, U.S.

4  Constitution, by failing to provide conflict-free

5  representation due to Petitioner's inability to

6  pay for his further services;

7      And,

8      5. DECLARE all other relief as justice may

9  require;

10      RESPECTFULLY, SUBMITTED.

11  ///

12                  VERIFICATION

13      I, Ivan Nunez, am the Petitioner herein and

14  I hereby swear and declare that the foregoing

15  is true and correct under penalty of parjury.

16      EXECUTED under penalty of parjury at FRESNO

17  COUNTY, California on this __30__ day of June,

18  2008.

19

20

21                      Ivan Nunez

22                      Pro se

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

COURT PAPER
STATE OF CALIFORNIA

In the UNITED STATES DISTRICT COURT FILED

For the NORTHERN DISTRICT of CALIFORNIA 2 PM 12: 53

RICHARD W. WILKING
CLERK U.S. DISTRICT COURT

No. C-07-24

NUNEZ, Ivan M.,

        Petitioner,

vs.

YATES, James, Warden,

        Respondent.

PROOF OF SERVICE

I, ___Ivan M. Nunez___, am the undersigned and I hereby

declare that I am not a party to the above entitled action and that

I am over eighteen years of age.

On ___JUNE, 30___, 2008, I served a true and correct copy of

PETITIONER'S TRAVERSE TO RESPONDENT'S ANSWER ON HABEAS CORPUS (28

U.S.C. § 2254), by placing said document into a postage prepaid

envelope and addressed to the parties listed below, and by placing

said document into the Institutional Mail, a U.S. Post Office:

**CLERK of the COURT**
United States District Court
Northern District of Californi
450 Golden Gate Avenue
San Francisco, CA.  94102-3483

**STATE of CALIFORNIA**
Department of Justice
Office of the Attorney General
455 Golden Gate Ave., #11000
San Francisco, CA.  94102-7004
Attn: R.A. Chacon (#119624)

I, ___Ivan M. Nunez___, hereby swear and declare that the

foregoing is true and correct under penalty of perjury.

EXECUTED under penalty of perjury at FRESNO COUNTY, California,

on this 30 day of ___June___, 2008.

___Ivan Nunez___