IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IVAN M. NUNEZ,                           )
                                         )
            Petitioner,                  )      No. C 07-2485 JSW (PR)
                                         )
      v.                                 )      ORDER DENYING PETITION
                                         )      FOR A WRIT OF HABEAS
JAMES A. YATES, Warden,                  )      CORPUS
                                         )
            Respondent.                  )
_____          )

## INTRODUCTION

Ivan M. Nunez, a prisoner of the State of California currently incarcerated at the Pleasant Valley State Prison in Coalinga, California, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This Court ordered Respondent to show cause as to why two claims raised in the petition should not be granted. Respondent filed an answer, a memorandum of points and authorities in support thereof, and exhibits. Petitioner has filed a traverse. This order denies the petition for a writ of habeas corpus on the merits.

## PROCEDURAL BACKGROUND

Petitioner was convicted after a jury trial in Santa Clara County Superior Court of felony battery with serious bodily injury and assault by means of force likely to produce great bodily injury. (Petitioner's Traverse at 16-17.) The jury also found true an enhancement allegation that Petitioner had personally inflicted great bodily injury. (*Id.* at 17.) Petitioner admitted that he had two prior felony convictions and had served two prior prison terms. (*Id.* at 16-17.) He was

sentenced to a term of thirty-five years to life in state prison on September 30, 2004.  (*Id.* at 17.)

Petitioner appealed his conviction to the California Court of Appeal, Sixth District, which affirmed the conviction in an unpublished, reasoned opinion filed October 12, 2005.  (Respondent's Answer Exhibit (hereinafter "Resp. Answer Ex.") 6.)  On December 21, 2005, the California Supreme Court denied review. (Resp. Answer Ex. 8.)

Petitioner filed a petition for a writ of habeas corpus in the Santa Clara County Superior Court which was denied on May 31, 2006.  (Resp. Answer Ex. 9.)  He then filed a petition for a writ of habeas corpus in the California Court of Appeal, Sixth District, which was denied on August 23, 2006.  (Resp. Answer Ex. 11.)  Finally, Petitioner filed a petition for habeas corpus in the California Supreme Court which was denied on March 28, 2007.  (Resp. Answer Ex. 13.) On May 9, 2007, Petitioner filed the instant petition.

## FACTUAL BACKGROUND

The facts underlying the charged offenses, as found by the California Court of Appeal, are as follows:

*Prosecution Case*

The incident that led to defendant's convictions occurred at approximately 8:00 a.m. on October 14, 2003, at the intersection of Marten Avenue and Mount Rushmore Drive in San Jose near August Boeger Junior High School.  At the time of the incident, Chieu Nguyen and Toan Pho were employed by the San Jose Police Department as crossing guards and were assigned to patrol the intersection in front of the school.  Marten Avenue and Mount Rushmore Drive form a T-intersection; Mount Rushmore terminated where it intersected with Marten.  The entrance to the school parking lot was at the top of the T, opposite Mount Rushmore.

The school was located on the south side of Marten Avenue.  There were two crosswalks at the intersection.  One crosswalk spanned Marten Avenue and consisted of two parallel yellow lines with wide yellow bands painted inside of them.  It ran from the northeast

corner of the intersection to the sidewalk in front of the school. The second crosswalk spanned Mount Rushmore Drive. It consisted of two parallel yellow lines that ran from the northeast corner of the intersection to the northwest corner of the intersection. There were no bars painted inside the crosswalk on Mount Rushmore.

Nguyen and Pho shared responsibility for patrolling the crosswalks. Pho was responsible for patrolling the south side of Marten Avenue and Nguyen was responsible for the north side of Marten Avenue, including the crosswalk on Mount Rushmore.

At the time of the incident, both Nguyen and Pho stepped out onto the crosswalk on Marten and stopped the traffic so that students could cross. Both men stood in the crosswalk, holding aluminum stop signs. Defendant was driving a gold Mazda RX-7 westbound on Marten. When he reached the intersection, defendant ignored Nguyen's stop sign and attempted to turn right onto Mount Rushmore. At first, Nguyen thought defendant did not see his stop sign and lowered the sign so it would be easier for defendant to see. As defendant inched his car around the corner, the car made contact with Nguyen's sign. The stop sign touched defendant's car on the driver's side of the windshield near the mirror. Nguyen stepped in front of defendant's car and signaled for him to back it up. Defendant continued to inch his car forward.

After Nguyen told defendant to back up, defendant looked angry. Nguyen felt unsafe. He turned and ran from the crosswalk on Marten toward the crosswalk on Mount Rushmore. Defendant stopped his car in the crosswalk on Mount Rushmore, jumped out, chased Nguyen to the middle of the crosswalk on Mount Rushmore, and started hitting him in the chest. Nguyen dropped his sign. Defendant grabbed Nguyen in a "bear hug" from the front and threw him to the ground. Nguyen's head hit the pavement. Nguyen denied hitting defendant with his sign. A 14-year-old student eyewitness did not see Nguyen hit defendant with the sign.

After Pho helped the children cross safely, he ran over to the crosswalk on Mount Rushmore to help Nguyen. Pho yelled, "Stop, stop! Calm down!" As he ran, Pho held his aluminum stop sign in his right hand, hanging down behind his back toward his knees. It was easier to run with the sign that way.

As Pho approached, defendant turned around and punched Pho in the throat with his fist. Defendant jumped back into his car and fled the scene, heading northbound on Mount Rushmore. Pho started to fall backwards, but regained his balance. He then helped Nguyen over to the sidewalk.

Pho did not put the sign up to protect himself or attempt to strike defendant with the sign. The student eyewitness did not see Pho turn his sign onto its side or use it like a hatchet. However, the

3

student testified that Pho tried to hit defendant with his sign, but did not get a chance to actually hit defendant because he got punched in the throat "pretty quick[ly]."

During the incident, three vehicles stopped behind defendant's car on Marten. Sheila Carillo, the driver of the third vehicle, was curious about what was holding up traffic. She looked to the right and saw defendant struggling with Pho in the crosswalk on Mount Rushmore. A few moments later, she saw the gold Mazda leave the scene. After the incident, defendant drove home to his mother's house, which was near the school. Carillo, who had also turned onto Mount Rushmore, saw defendant's gold Mazda parked in a driveway a few blocks away and called the police.

Later that day, police investigators found defendant's car at a mobile home park. By that time, defendant had removed the license plates from the car and installed a novelty plate on the rear of the car. Defendant took the license plates off his car because he did not want to get arrested.

After defendant was arrested, police detectives noticed abrasions and swelling on defendant's knuckles. This led the officers to believe defendant had been in a fight. Defendant told that officers his hands were not swollen and attributed the redness to the sun, to a rash, and to dry skin.

In a taped interview, defendant told the officers the crossing guards made threatening gestures at him with their stop signs and claimed he acted in self-defense. One of the officers inspected defendant's car. It did not have any dents or damage caused by a blow with a metal sign. The officers did not know that defendant had painted the car himself. They did not notice that he had paint on his fingernails at the time of the interview.

Nguyen felt pain in his back and head and was taken by ambulance to San Jose Medical Center. As a result of the incident, Nguyen sustained a subdural, subarachnoid hematoma from a blow to the back of his head, an abrasion and a laceration to the back of his head, a non-displaced fracture of the sixth right rib, and a contusion with swelling along the length of his back. The hospital trauma physician consulted with a neurosurgeon, who advised against surgery. Nguyen was hospitalized for two days for observation. He also received follow-up care from a neurosurgeon.

Pho was treated at San Jose Medical Center and released. He experienced pain in his throat, which lasted about two months. He had difficulty speaking and swallowing. He was on a liquid diet for about 20 days.

At the time of the incident, Nguyen was five feet, six inches tall and weighed 115 to 116 pounds. He was 48 years old. Pho was five feet, six inches tall and weighed 120 pounds. He was 57 years

4

old. Defendant was between five feet nine inches and six feet tall and weighed 190 to 195 pounds. Defendant was 38 years old.

*Defense Case*

Defendant did not testify. He relied principally on the audiotape of his interview with the police. In the interview, defendant said he was driving down the road when he saw two men with big stop signs. There were no children in the area, so he attempted to turn right from Marten onto Mount Rushmore, when one of the men (Nguyen) started chasing his car with the stop sign. Nguyen was swinging the sign and trying to dent defendant's car. Defendant was not sure whether Nguyen made contact with the car.

Defendant stepped out of his car and asked Nguyen what was going on. Nguyen looked at him "all crazy," charged him, and tried to hit him over the head with the sharp edge of the sign. Defendant blocked Nguyen's move. Nguyen fell onto his "butt." Pho began to chase defendant and did the same thing as Nguyen.

Defendant stated that the crossing guards swung their signs at his skull, that they wanted to "chop" him in the head with their signs, and that they used the signs like knives or swords. Defendant said Pho turned his sign flat to hit him (defendant) over the head and slice him. The sign probably hit his shoulder, but there was no sign of injury. Defendant blocked the crossing guards' moves. Defendant admitted he pushed one of the guards in the face with a semi-closed fist. He later described this same maneuver as a palm strike. He said it may have looked like he was hitting him when he was actually blocking him. Defendant admitted hitting each of the guards with one "palm strike." He pushed Nguyen "pretty far" out of the way and gave him an "elbow block" and then Nguyen fell.

Defendant left because he did not want to get into a bigger fight. Defendant did not report the incident to the police because he did not think it was that big of a deal. Defendant claimed the crossing guards acted this way because they were prejudiced against him or his "shiny hot rod." He speculated that they came after him because "their culture or somethin' is different" and "they didn't like Americans." Defendant also relied on Carillo's testimony that he and Pho were struggling in the crosswalk.

(Resp. Answer Ex. 6 at 2-7 (footnote omitted)); *People v. Nunez*, No. H026086, 2005 WL 2630116 (Cal. Ct. App. Oct. 12, 2005) at *1-4 (footnote omitted).

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the

5

ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  A district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Under the 'contrary to' clause, a federal habeas court may grant the writ if a state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if a state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings of the Supreme Court as of the time of the state court decision. *Williams* 529 U.S. at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).  While the circuit law may be "persuasive authority" for the purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are

6

binding on the state courts and only those holdings need be "reasonably" applied. *Clark*, 331 F.3d at 1069.

In deciding whether a state court's decision is contrary to, or an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of the Petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). Where the state court gives no reasoned explanation of its decision on a petitioner's federal claim, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law. *Plascencia v. Alameida*, 467 F.3d 1190, 1198 (9th Cir. 2006); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003); *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000).

In his petition for a writ of habeas corpus, Petitioner asserts two claims for relief: (1) Petitioner's trial counsel, by failing to secure the attendance and testimony of several specific witnesses, provided ineffective assistance; and (2) the trial court violated Petitioner's right to a fair trial under the Fifth, Sixth and Fourteenth Amendments by failing to provide a particular jury instruction on self-defense. In the traverse, Petitioner claims for the first time that he was denied effective assistance of counsel because his inability to adequately pay his private attorney hampered counsel's representation of him in securing witnesses. (Petitioner's Traverse at 44-46.) However, this Court may not consider claims not raised in the petition.

## DISCUSSION

### 1.     Ineffective Assistance of Counsel

Petitioner claims he was denied his Sixth Amendment right to effective counsel

7

because his trial attorney failed to compel the attendance and testimony of four witnesses who Petitioner contends should have been called to testify in his defense, specifically Donna Padron, Sheila Carrillo, Officer Ardizzone, and Officer Biskup.

**A.     Legal Standard**

To prevail on an ineffective assistance of counsel claim, Petitioner must establish two things.  First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Id.*  Where the defendant is challenging his conviction, the appropriate question is "'whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"  *Luna v. Cambra*, 306 F.3d 954, 961 (9th Cir.), *amended*, 311 F.3d 928 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 695).  The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis.  *See Williams (Terry) v. Taylor*, 529 U.S. 362, 404-08 (2000).

In order to establish that counsel's performance was deficient, petitioner must make a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *See Strickland*, 466 U.S. at 687.  "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies."  *Strickland*, 466 U.S. at 697.  "If it is easier to dispose of an

8

ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

A defendant's mere speculation that a witness might have given helpful information if interviewed is not enough to establish ineffective assistance. *See Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). To establish prejudice caused by the failure to call a witness, a petitioner must show that the witness was likely to have been available to testify, that the witness would have given the proffered testimony, and that the witness's testimony created a reasonable probability that the jury would have reached a verdict more favorable to the petitioner. *Alcala v. Woodford*, 334 F.3d 862, 872-73 (9th Cir. 2003).

### B.      Analysis

Petitioner first raised his claim for ineffective assistance of counsel based on his attorney's failure to compel the attendance of necessary witnesses in his petition for habeas corpus to the Santa Clara County Superior Court. In that action, Petitioner listed only one witness, Donna Padron, who he contends should have been called to testify by defense counsel. The Superior Court cited *Strickland v. Washington*, 466 U.S. 668 (1984) and denied Petitioner's claim, stating that "[p]etitioner has failed to show any such witness existed." (Resp. Answer Ex. 9 at 2.) Petitioner raised the ineffective assistance of counsel claim as to all four witnesses listed above in his petitions for habeas corpus in the California Court of Appeal, Sixth District, and the California Supreme Court. (Resp. Answer Ex. 10 at 1-2; Resp. Answer Ex. 12 at 1-2.) Both petitions were denied without a reasoned opinion. (Resp. Answer Ex. 11; Resp. Answer Ex. 13.)

Because there is no clearly reasoned state court opinion on Petitioner's entire claim, this Court will conduct an independent review of the record to determine whether the state courts' rejection of Petitioner's claim was an unreasonable application

of clearly established federal law.  *See* 28 U.S.C. § 2254(d); *Plascencia*, 467 F.3d at 1198.  Additionally, because Petitioner is unable to show that any prejudice resulted from the absence of any particular witness, this Court does not address the question of whether the performance of Petitioner's counsel in failing to call such witnesses to testify was in fact deficient.  *See Strickland*, 466 U.S. at 697.

Petitioner claims that his attorney erroneously failed to compel the attendance of Officer Ardizzone at trial.  However, the trial record shows that this claim is false.  Officer Ardizzone testified at length during the trial.  (Resp. Answer Ex. 14 at 247-73, 295-316.)  Therefore, this claim fails.

Petitioner also claims that his attorney erroneously failed to call Officer Biskup as a witness.  The reporter's transcript establishes that Officer Biskup was unavailable during the trial because he was on vacation and had not been personally served with a subpoena.  (Resp. Answer Ex. 14 at 465-66.)  Petitioner claims that "Officer Biskup's attendance at [the trial] was needed to impeach [M]r. Pho's testimony, whose testimony at trial was a complete turn around to what Mr. Pho told Officer Biskup during the investigation to the facts of this case."  (Petition at 6.)  Because of Officer Biskup's unavailability, the prosecution and defense stipulated to his testimony based on his police report describing his interview with Pho and defense counsel read this testimony to the jury.  (Resp. Answer Ex. 14 at 498-501.)  Therefore Petitioner was not deprived of an opportunity to use Officer Biskup's testimony to impeach Pho's testimony.  Because Petitioner has not demonstrated that Officer Biskup could have provided any additional impeachment information not available through the admitted stipulation, he has not shown any prejudice resulting from his attorney's failure to compel Officer Biskup's attendance at the trial.  *See Alcala*, 334 F.3d at 872-73.

Petitioner further claims that his attorney erroneously failed to call Sheila Carillo as a witness.  The reporter's transcript shows that Sheila Carillo was unavailable during

10

the trial because she was in Mexico.  (Resp. Answer Ex. 14 at 427-28, 437-40.)
Petitioner claims that "the testimony of Ms. [Carillo] was crucial and necessary to
challenge the credibility of Mr. Pho whose testimony was entire[ly] different to what
Ms. [Carillo] witnessed."  (Petition at 6.)  Carillo had previously testified at Petitioner's
preliminary hearing, so the prosecution and defense agreed to read Carillo's earlier
sworn testimony to the jurors.  (Resp. Answer Ex. 14 at 439-41.)  Petitioner's attorney
read Carillo's earlier testimony in which she thoroughly described her recollection of
the events surrounding Petitioner's fight with the two crossing guards.  (*Id.* at 472-91.)
Petitioner does not explain how any further testimony from Carillo was "crucial and
necessary" to his defense which was not established through her earlier testimony.
Therefore, he has not shown any prejudice as a result of his attorney's failure to compel
Carillo's attendance at trial.  *See Alcala*, 334 F.3d at 872-73.

Finally, Petitioner claims that his attorney erroneously failed to call Donna
Padron as a witness.  Petitioner claims that Donna Padron "made statements to
[O]fficer Ardizzone that were favorable and essential for his defense" and that he was
therefore "denied . . . a known and potentially meritorious defense" because his
attorney failed to secure her attendance and testimony.  (Petition at 6.)  Petitioner
includes the report of Padron's statement taken by Officer Ardizzone in his petition for
habeas corpus to the state Court of Appeal; the report states the following:

> Padron told me that she saw the driver of the car get out and begin
> punching and striking at a crossing guard with his hands.  Padron stated
> that she saw the crossing guard try and defend himself by striking at the
> suspect with his crossing sign, but that *the assault was completely
> initiated by the driver of the car.*

> Padron then told me that when the second crossing guard came to the aid
> of the first, the driver of the car began to attack him also.  Padron told me
> that this lasted only a short time before the driver got back into his car
> and left the area on the side street.

(Resp. Answer Ex. 10 (Ex. A) (emphasis added).)

Petitioner does not explain which of Padron's statements were "favorable and

essential for his defense" or how he was prejudiced by her absence at trial.  (Petition at
6.)  Rather, Padron's testimony appears to directly contradict Petitioner's defense
theory that he acted in self-defense only after the crossing guards attempted to hit him
with their signs.  (Resp. Answer Ex. 6 at 13); *Nunez*, 2005 WL 2630116 at *8.
Petitioner has not demonstrated a probability that the result of his trial would have been
different if Padron would have testified.  *See Alcala*, 334 F.3d at 872-73.

Because Petitioner has not demonstrated any probability that the result of his
trial would have been different had his attorney compelled the attendance and
testimony of any of the four witnesses listed above, he cannot show any prejudice and
therefore his claim of ineffective assistance of counsel must fail.  *Strickland*, 466 U.S.
at 694.  The state courts' rejection of Petitioner's ineffective assistance of counsel claim
was neither contrary to nor an unreasonable application of clearly established federal
law, and it was not based on an unreasonable determination of the facts.  *See* 28 U.S.C.
§ 2254(d); *Plascencia*, 467 F.3d at 1198.

### 2.    **Jury Instructions**

Petitioner claims that the trial court violated his right to due process and a fair
trial by failing to provide certain jury instructions.  Specifically, Petitioner contends
that the trial court improperly failed to instruct the jury that "[i]f the victim of simple
assault responds in a sudden and deadly counterassault, the original aggressor need not
attempt to withdraw and may use reasonably necessary force in self-defense."  (Resp.
Answer Ex. 6 at 9); *Nunez*, 2005 WL 2630116 at *5.

### A.    **Legal Standard**

The Due Process Clause of the Fourteenth Amendment requires that "criminal
defendants be afforded a meaningful opportunity to present a complete defense."
*California v. Trombetta*, 467 U.S. 479, 485 (1984).  Therefore, a criminal defendant is
entitled to adequate instructions on the defense theory of the case. *See, e.g., Conde v.*

*Henry*, 198 F.3d 734, 739 (9th Cir. 2000) (as amended) (error to deny defendant's request for instruction on simple kidnaping where such instruction was supported by the evidence); *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (failure to give instruction on exception to special circumstance felony murder violated defendant's due process right to present complete defense). However, due process does not require that an instruction be given unless the evidence supports it. *See Hopper v. Evans*, 456 U.S. 605, 611-12 (1982) (holding that a lesser included offense instruction need not be given unless the evidence would support convicting on the lesser offense and acquitting on the greater offense). "[A] state trial court's finding that the evidence does not support a claim [] is entitled to a presumption of correctness on federal habeas review." *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005) (citing *Hartman v. Summers*, 120 F.3d 157, 161 (9th Cir. 1997)).

"A state trial court's refusal to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceeding. The error must so infect the entire trial that the defendant was deprived of his right to a fair trial guaranteed by the due process clause of the fourteenth amendment." *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 2006). Furthermore, "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). The "burden is especially heavy" for a habeas petitioner whose claim involves a failure to give a particular instruction. *Id.* If a court finds a constitutional error, it must then determine whether the error had a substantial and injurious effect or influence on the jury's verdict before granting habeas relief. *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam), *citing Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

**B.     Analysis**

The state Court of Appeal gave the following background for Petitioner's jury

13

instruction claim:

> At trial, defendant claimed he punched Pho in self-defense after Pho tried to attack him with a hand-held stop sign. The trial court instructed the jury on self-defense with CALJIC Nos. 5.30 (self-defense against assault), 5.51 (self-defense-actual danger not necessary), 5.52 (self-defense-when danger ceases), and former CALJIC No. 5.54.1 (self-defense by an aggressor). The court also gave CALJIC No. 5.32 (defense of another).

> With respect to former CALJIC No. 5.54.1, the jury was instructed that: "The right of self-defense is only available to a person who initiated an assault if he has done all the following: [¶] 1. He has actually tried, in good faith, to refuse to continue fighting; [¶] 2. He has clearly informed his opponent, by either words or conduct, that he wants to stop fighting; and [¶] 3. He has clearly informed his opponent, by either words or conduct, that he has stopped fighting. [¶] After he has done these three things, he has the right to self-defense if his opponent continues to fight."

> Defendant objected to the use of former CALJIC No. 5.54.1, because it implied the assault was initiated by defendant. Defendant told the court he intended to argue that Nguyen was the initial aggressor and that Nguyen's act of hitting defendant's car was an assault. As for the encounter with Pho, defendant argued that he (defendant) was not the aggressor; that Pho came at him with the sign. The court gave the instruction over defendant's objections. When the court asked whether the instruction needed to be modified in any way, defendant did not respond.

> On appeal, defendant contends the trial court should have given the 2004 revised version of CALJIC No. 5.54, which contains language similar to the instruction given in this case, but includes the following alternative paragraph: "If the victim of simple assault responds in a sudden and deadly counterassault, the original aggressor need not attempt to withdraw and may use reasonably necessary force in self-defense."

(Resp. Answer Ex. 6 at 8-9 (footnote omitted)); *Nunez*, 2005 WL 2630116 at *5 (footnote omitted).

The Court of Appeal found that because there was no evidence showing that Petitioner committed a simple assault on either victim that was met with a sudden and deadly counterassault, the trial court was not required to instruct the jury with the language Petitioner refers to from revised CALJIC No. 5.54. (Resp. Answer Ex. 6 at 14); *Nunez*, 2005 WL 2630116 at *8. The court noted that Petitioner's statement to the police, upon which he relied at trial, indicates that he "swung at the crossing guards

14

only after they attacked him with their signs"; under this version of the events Petitioner was not the original aggressor and therefore the instruction on self-defense by an aggressor does not apply.  (*Id.* at 13); *Id.* at *8.  The appellate court also found alternately, that if Petitioner was the original aggressor, there was no evidence showing that he committed only a simple assault - the undisputed evidence established that Petitioner's assault "involved force that broke one of Nguyen's ribs, caused him to hemorrhage in the brain, and sent him to the hospital for two days."  (*Id.* at 14), *Id.* at *8.

Petitioner explains in his habeas petition that he "strongly believes that since he was confronted by the first allege[d] victim with aggression by hitting [his] car with a hand held stop sign, using profanaty [*sic*], and body-language similaring [*sic*] combatant stands [*sic*], that he was entitled to defend himself therein, from any type of assault, either, verbally or physically."  Petition at 7.  Petitioner's argument that he is entitled to defend himself against property damage and "verbal assaults" with great force represents an incorrect understanding of the legal standard for self-defense. Further, it is inconsistent with the jury instruction he claims should have been given here.

The state court's determination that the evidence did not support this particular jury instruction under state law is entitled to deference on habeas review.  *See Menendez*, 422 F.3d at 1029 (citing *Hartman v. Summers,* 120 F.3d 157, 161 (9th Cir. 1997)).  This Court finds that Petitioner's due process rights were not violated here, where he received adequate instructions on the defense theory of the case, including various instructions on self-defense, and was in no way prohibited from "present[ing] a complete defense."  *Trombetta*, 467 U.S. at 485; *see* (Resp. Answer Ex. 1 at 184-88.) Petitioner cannot meet his "especially heavy" burden of showing that he was deprived of a fair trial, and therefore is not entitled to habeas relief on this claim.  *Henderson*,

431 U.S. at 155.  The state court's determination was not contrary to or an unreasonable application of federal law nor an unreasonable determination of the facts in light of the evidence presented.

## CONCLUSION

After a careful review of the record and pertinent law, the petition for writ of habeas corpus is DENIED.  The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED:  October 20, 2009

_____
JEFFREY S. WHITE
United States District Judge

16

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

IVAN M NUNEZ,

       Plaintiff,

  v.

JAMES A YATES et al,

       Defendant.

_____/

Case Number: CV07-02485 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 20, 2009, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Ivan M. Nunez
J40408
Pleasant Valley State Prison
P.O. Box 8502
Coalinga, CA 93210

Dated: October 20, 2009

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk